**UNITED STATES of America,**
**Appellee,**

**v.**

**Karen DUNCAN, Appellant.**

**No. 72–1146.**

United States Court of Appeals,
Ninth Circuit.

March 6, 1972.

H. Peter Young (argued), Venice, Cal., Barrett S. Litt (argued), Los Angeles, Cal., W. Edward Morgan, Tucson, Ariz., Melvin Wulf, New York City, Laurence R. Sperber, Los Angeles, Cal., for appellant.

George Calhoun, Washington, D. C., (argued), William M. Piatt, Robert L. Keuch, Robert C. Mardian, Asst. Atty. Gen., Washington, D. C., William C. Smitherman, U. S. Atty., Ann Bowen, Asst. U. S. Atty., Tucson, Ariz., for appellee.

Before DUNIWAY, KILKENNY and TRASK, Circuit Judges.

DUNIWAY, Circuit Judge:

Karen Duncan appeals from an order holding her in contempt of court for her refusal to answer certain questions before a grand jury. We affirm.

Duncan appeared before the grand jury on August 24, 1971. She refused to answer a number of questions, stating several reasons for refusing. At the conclusion of the questioning, her counsel were served with an application for an order requiring her to testify pursuant to 18 U.S.C. § 2514, with oral notice that the application was to be heard the next day. On the afternoon of August 25, the application was heard and granted, the court overruling all opposing objections and motions. The court ordered her to appear again before the grand jury on September 7. She did so, and again declined to answer the questions. On November 29, the court ordered that she appear on January 10, 1972, to show cause why she should not be adjudged in contempt of court. At that time she did appear, her various motions and objections were overruled, and she was adjudged to be in contempt. The court ordered that she be committed to the custody of the Marshal for the life of the grand jury or until she purged herself of the contempt. Under 28 U.S.C. § 1826(a) she cannot be confined for more than 18 months.

We consider Duncan's numerous points *seriatim.*

### 1. *Electronic survillance.*

■ Duncan argues that she is entitled, before answering, to a determination whether the grand jury subpoena and the questions asked her are tainted by electronic surveillance of her conversations or her premises. We have several times held that a witness before a grand jury has no standing to raise this question. United States v. Reynolds, 9 Cir., 1971, 449 F.2d 1347, and cases there cited. We are aware that the question is now pending before the Supreme Court in United States v. Gelbard, 9 Cir., 1971, 443 F.2d 837, cert. granted, 404 U.S. 990, 92 S.Ct. 529, 30

L.Ed.2d 540, but unless that Court decides otherwise, we consider ourselves bound by our prior decisions.

### 2. *Composition of the Grand Jury.*

Duncan argues that she need not answer because the grand jury was chosen by an improper selection procedure.

#### a. *Standing.*

■ We do not think that Duncan has standing to raise this claim. The Jury Selection and Service Act of 1968 (28 U.S.C. § 1861 et seq.), in § 1867(a) and (e), appears to restrict the right to challenge a grand jury on the ground that it was not selected in compliance with the Act. Subsection (a) confers the right, "in a criminal case" only on "the defendant." Subsection (e) makes the procedures that § 1867 prescribes "exclusive." Duncan is not a defendant; she has not been indicted by the grand jury. She has only been called before it as a witness.

The Constitution requires that a charge of felony be by a grand jury. It does not make a grand jury the only body that can call witnesses before it and, if they refuse, seek the order of a court compelling answers. Congress has conferred similar powers upon numerous administrative agencies. As an asker of questions, a grand jury has a different function from its function as an indicting or presenting body under the Constitution, albeit the two are frequently complementary. The grand jury has as much power to inquire in cases in which it ultimately decides not to indict as in those in which it does indict. The grand jury has not asked to have Duncan held in contempt. That request was by the United States Attorney. *Cf.* 28 U.S.C. § 1826(a). The grand jury has not adjudged that Duncan is in contempt; that was done by the court, after the court, not the grand jury, ordered her to answer. These factors distinguish United States ex rel. Chestnut v. Criminal Court et al., 2 Cir., 1971, 442 F.2d 611, on which Duncan relies. There it was the grand jury which for-

mally charged the petitioning witnesses with contempt, and the contempt was failure to answer the grand jury's questions. Here the court had ordered Duncan to answer, and it was her disobedience of the court's order that was held to be a contempt. All of the other cases on which Duncan relies involved challenges to the grand jury by defendants who had been indicted.

The rationale, if not the holding, of our decision in United States v. Reynolds, *supra*, supports our decision here.

■ In 1919, in Blair v. United States, 250 U.S. 273, 282, 39 S.Ct. 468, 471, 63 L.Ed. 979, the Supreme Court said about a grand jury witness:

> "On familiar principles, he is not entitled to challenge the authority of the court or of the grand jury, provided they have a *de facto* existence and organization."

See also United States v. Neff, 3 Cir., 1954, 212 F.2d 297, 301; United States v. Girgenti, 3 Cir., 1952, 197 F.2d 218. Thus a grand jury need only be *de facto*, as to a witness, while it may be required to be *de jure* as to a person whom it indicts. That was exactly the situation in *Neff, supra. In Neff*, the court upheld the conviction of a witness for perjury committed before a grand jury. This it did in spite of its holding in United States v. Valenti, 3 Cir., 1953, 207 F.2d 242, that the same grand jury did not have jurisdiction to indict the person whose conduct it had investigated.

Assuming *arguendo* that Duncan has standing, we turn to her next argument.

b. *Exclusion of persons less than 21 years old.*

■ The Jury Selection and Service Act, in § 1865(b) (1), requires that jurors be 21 years old. Nevertheless, Duncan makes an elaborate argument that persons 18 through 20 years old must be included. She points to the Twenty Sixth Amendment, which gives those persons the right to vote. She argues that the 21 year minimum age limit in § 1865(b) (1), when considered together with the importance that the Jury Selection and Service Act gives to voter registration or voter lists (§ 1863(b) (2), § 1869(c), (d)), should be construed as a mere reference to the then general minimum voting age. She would have us rule that "twenty-one years old" now means "eighteen years old." Alternatively, she asks us to hold the 21 year age minimum unconstitutional as a denial of equal protection of the laws, arguing that persons 18 to 20 years old are a class which cannot be arbitrarily excluded from grand or petit juries. She buttresses this argument by reference to the Twenty Sixth Amendment and to the declaration of policy in § 1861.[1]

We do not accept these arguments. The Jury Selection and Service Act does not require that every voter or registered voter be entitled to serve. It permits excusing groups or occupational classes on grounds of hardship or inconvenience, § 1863(b) (5), (7). It permits exempting groups or occupational classes, § 1863(b) (6), and requires exemption of three such classes. It provides various grounds for disqualification, § 1865(b). Moreover, in § 1862 it precludes exclusion "on account of race, color, religion, sex, national origin, or economic status," but does not mention age, no doubt because § 1865(b) (1) does exclude on grounds of age.

Congress could have amended § 1865(b) (1) when it adopted the Voting Rights Act Amendments of 1970, Pub.L. 91–285, 84 Stat. 314, or when it proposed the Twenty Sixth Amendment, or

---

1. "It is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes. It is further the policy of the United States that all citizens shall have the opportunity to be considered for service on grand and petit juries in the district courts of the United States, and shall have an obligation to serve as jurors when summoned for that purpose."

after that amendment became effective, but it did not. We think it significant that state minimum age requirements for jury service are not uniform. *See, e. g.*, Carter v. Jury Commission, 1970, 396 U.S. 320, 333 fn. 29, 90 S.Ct. 518, 24 L.Ed.2d 549; where the Court lists statutes of five states, prescribing minima from 20 to 25 years. Nor are state minima for voting. *See, e. g.*, Oregon v. Mitchell, 1970, 400 U.S. 112, 280, 91 S. Ct. 260, 27 L.Ed.2d 272, where it is pointed out that Georgia and Kentucky allowed 18 year olds to vote as early as 1943 and 1955 respectively. (Opinion of Brennan, White and Marshall, J.J.) Yet Congress established a uniform minimum for all federal juries in § 1865(b) (1).

Allowing, as best we can, for the fact that each of the members of this panel is considerably more than 21 years old, we can still find good reason for excluding persons 18 years old or over, but under 21, from jury service. We take judicial notice, as did the trial judge, of the fact that today a very high percentage of persons in the 18–20 age bracket are in school or college. We know, too, that they are often away from their home communities. To call them out of school or college to serve on juries could be a considerable hardship on them, and could prolong their period of education. Congress can validly consider a fully educated citizenry more important than jury service by those still in the educational process.

Duncan does not argue that persons under 18 years of age may not be excluded, nor could she reasonably do so. At some point on the age scale, all would agree that those below it should not be jurors because of immaturity and lack of education. Opinions may differ as to where the line should be drawn, but not as to whether it should be drawn at all. The age of twenty-one, as the dividing line between minority and majority, has been generally accepted for a very long time. In a sense, it is arbitrary, as any such line must be arbitrary. But that does not make it unreasonable; its long

acceptance argues in its favor. We cannot say that it is either arbitrary or unreasonable to lower it for voting but to retain it for jury service. We know of no good reason why the Congress cannot require as a qualification for jury service, the minimum degree of experience and maturity presumptively represented by being 21 years old. United States v. Tantash, 9 Cir., 1969, 409 F.2d 227, 228; George v. United States, 9 Cir., 1952, 196 F.2d 445, 452–454.

In United States ex rel. Chestnut v. Criminal Court et al., 2 Cir., 1971, 442 F.2d 611, the court upheld against a similar challenge, the New York City practice of excluding from grand jury service persons under 35 and persons over 70. In King v. United States, 1 Cir., 1965, 346 F.2d 123, the court upheld a federal grand jury from which persons under 25 had been excluded.

c. *Motion for an evidentiary hearing.*

Duncan moved for an evidentiary hearing on her contention that young people were being systematically excluded from grand jury service in the District of Arizona. She asked for an order permitting her to examine the records of jury selection under § 1867(f). This was denied. We find no error.

First, for reasons already stated, she lacks standing.

■ Second, assuming *arguendo* that Duncan has standing, the motion was insufficient. Section 1867(d) requires that the motion contain "a sworn statement of facts which . . . would constitute a substantial failure to comply with" the Act. Duncan stated three grounds: (1) the use of outdated voter registration lists, (2) the exclusion of persons under 21 years old, and (3) "[b]y other exclusionary procedures not presently known." The third ground is manifestly insufficient. The second ground we have disposed of.

The first ground is based on the fact that the Arizona plan, adopted under § 1863, uses voter registration lists for

even numbered years. Duncan points out that the grand jury was convened in March, 1971, and thus the names in the master jury wheel (§ 1863(b) (4)) came from a list of voters who registered for the 1970 general election. Consequently, she says, the youngest person on the grand jury would have to be well on the way to his 23rd birthday. Hence, persons 21 and 22 were excluded.

We consider this argument frivolous. Carried to its logical extreme, it would require a new selection of names from the voter lists, and a new drawing from the master jury wheel, every time that a jury is to be drawn. Neither the Act nor the Constitution requires transforming the orderly procedure contemplated by the Act and embodied in the plan into the administrative monstrosity that acceptance of Duncan's theory would require.

Even the courts cannot stop the passage of time, although it may occasionally appear to some that they or the litigants try. The life of the grand jury is 18 months. Thus anyone on it who was 21 when his name was drawn will be 22 or even 23 when the 18 months are up. Does this invalidate the proceedings of the grand jury during the last six months of its life?

We hold that, to the extent that the time elements in jury selection embodied in the plan may postpone selection of those who reach 21, they are reasonable and do not invidiously discriminate against such persons.

d. *Residency requirements.*

■ Section 1865(b) (1) requires residency of prospective jurors "for a period of one year within the judicial district." Duncan argues that this requirement is unconstitutional. Again assuming *arguendo* that she has standing, we reject the argument.

She cites Shapiro v. Thompson, 1969, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600, dealing with a state residency requirement for eligibility to receive welfare payments. She also cites § 202 of the Voting Rights Act Amendments of 1970, Pub.L. 91–285, 84 Stat. 314, which prohibits such requirements for voting. We do not think that the principles of these authorities are automatically transferrable to jury service. Rather we think that the requirement of § 1865(b) (1) is an attempt to give effect to the requirement of the Sixth Amendment, that the jury be "of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law . . .." Historically one of the virtues of the jury, whether grand or petit, is supposed to be that it is a local body acquainted with local conditions, customs and mores. The residency requirement seems to us to be rationally related to that notion.

3. *The grant of immunity.*

■ Immunity was granted to Duncan under 18 U.S.C. § 2514. The Attorney General authorized the government's application in a letter reciting that the grand jury was investigating, among other things, violations of 18 U.S.C. § 2101. In his affidavit in support of the application, the United States Attorney made the same representation. This was sufficient. In re Russo, 9 Cir., 1971, 448 F.2d 369, 372–374, and cases there cited.

4. *Second Grand Jury.*

This is the second grand jury of the District of Arizona before which Duncan has been called to testify. She was adjudged to be in contempt of court after her appearance before the first grand jury, an adjudication that we upheld in United States v. Weinberg, 9 Cir., 1971, 439 F.2d 743. Thereafter the term of the grand jury expired, and she was released.

a. *Double jeopardy.*

■ Duncan claims that she is being subjected to double jeopardy in violation of the Fifth Amendment. The proceeding here, like the prior proceeding, is civil, not criminal, Bacon v. United

States, 9 Cir., 1971, 446 F.2d 667, 669, and therefore the Fifth Amendment provision does not apply.

**b.** *Due process.*

 Duncan also invokes due process. No pertinent authority is cited, and we know of none. Duncan could have complied with the lawful order of the court by answering the questions before the first grand jury. Her own recalcitrance frustrated that grand jury's investigation. We do not find it shocking that a successor grand jury wants the testimony to which it is legally entitled. We hold that her present contempt is separate from her previous contempt, and that the order does not violate due process.

**c.** *Cruel and unusual punishment.*

 We find no cruel and unusual punishment here. The purpose of the order is to obtain compliance, not to punish. Duncan can purge herself whenever she decides to do so. She carries the keys to the prison in her pocket.

Shillitani v. United States, 1966, 384 U. S. 364, 368, 86 S.Ct. 1531, 16 L.Ed.2d 622.

**d.** *28 U.S.C. § 1826(a).*

We find no violation of the time limitations in § 1826(a) (2).

**5.** *Advice of counsel.*

 Duncan contends that exclusion of her counsel from the grand jury room violated her right to counsel guaranteed by the Sixth Amendment. She was permitted to and did consult with counsel as much as she requested. She was not entitled to have counsel with her in the grand jury room. Gollaher v. United States, 9 Cir., 1969, 419 F.2d 520, 523–524.

**6.** *Other contentions.*

Each of Duncan's other contentions was rejected by us in United States v. Weinberg, *supra.* We again reject them here.

Affirmed.