**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Richard Frederick ROSS, Defendant-Appellant.**

**No. 72–1423.**

United States Court of Appeals, Ninth Circuit.

Oct. 26, 1972.

John T. Hansen (argued), San Francisco, Cal., Robert L. Henn, San Francisco, Cal., for defendant-appellant.

Robert E. Carey, Jr., Asst. U. S. Atty. (argued), F. Steele Langford, Asst. U. S. Atty., James L. Browning, Jr., U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before BARNES, DUNIWAY and TRASK, Circuit Judges.

DUNIWAY, Circuit Judge.

Richard Ross was convicted under 50 U.S.C.App. § 462 for refusing to submit to induction into the armed forces. We affirm.

We consider Ross' arguments *seriatim*.

I. *Constitutionality of the Draft.*

Ross' arguments are foreclosed by prior decisions of this court. *See* United States v. Lumsden, 9 Cir., 1971, 449 F.2d 154; Harris v. United States, 9 Cir., 1969, 412 F.2d 384, 386.

II. *Sufficiency of the evidence.*

There is ample evidence that Ross' refusal to be inducted was wilful. Psychiatric testimony to the contrary was rejected by the jury, as it could do. Gallion v. United States, 9 Cir., 1967, 386 F.2d 255, 257.

III. *Challenge to the jury.*

Ross' jury was drawn from a pool selected under the Jury Selection Plan for the Northern District of California (the Plan), adopted pursuant to the Jury Selection and Service Act of 1968 (the Act), 28 U.S.C. §§ 1861–71. He argues that his conviction should be reversed because of error in that process. He presents both constitutional and statutory grounds for this position.

A. *Constitutional Challenge.*

1. *Exclusion of 18–21 year-olds from jury service.*

Ross argues that 28 U.S.C. § 1865(b)(1), which at the time of his trial excluded persons under 21 years of age from federal jury service, violated rights secured to him by the Fifth and Sixth Amendments to the United States Constitution.

We rejected this argument in United States v. Duncan, 9 Cir., 1972, 456 F.2d 1401, 1404–1405. The fact that Congress, in 1972, amended the Act to reduce the minimum age to 18 (Pub.L. 92–269, § 1, (Apr. 6, 1972), 86 Stat. 117, amending 28 U.S.C. § 1865(b)(1)) adds no weight to Ross' argument. All that Congress' action proves is that Congress changed the law, as it has the right and power to do.

2. *One-year residency requirement.*

Ross argues that the one-year residency requirement of section 1865 (b)(1) violated his Fifth and Sixth Amendment rights. Again, a similar challenge was rejected by this court in *Duncan, supra,* 456 F.2d at 1406.

Ross contends that in *Duncan* we applied the wrong constitutional stand-

ard to the residency requirement and urges us to re-examine its holding in the light of Dunn v. Blumstein, 1972, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274.

In *Dunn,* the Supreme Court held invalid a Tennessee statute which prohibited new residents from voting in state elections for certain periods of time. It found that this residency requirement could not withstand the close scrutiny required by the strict equal protection test of the Fourteenth Amendment. 405 U.S. at 342, 360, 92 S.Ct. 995. Ross would have us apply the same test here. However, while the equal protection clause and the due process clause of the Fifth Amendment are not mutually exclusive, *see* Schneider v. Rusk, 1963, 377 U.S. 163, 168, 84 S.Ct. 1187, 12 L.Ed. 2d 218; Bolling v. Sharpe, 1954, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884, decisions applying the one are not automatically transferable to the other. Rather, classifications in federal statutes will be invalidated only if they are arbitrary or otherwise "so unjustifiable as to be violative of due process." Bolling v. Sharpe, *supra,* 347 U.S. at 499, 500, 74 S.Ct. at 694. It was that test under which we sustained the residency requirement in *Duncan;* Dunn v. Blumstein is not in point. We adhere to our decision in *Duncan.*

B. *Statutory challenge.*

Ross argues that the Plan violates the Act in several respects, and that his conviction must therefore be reversed under 28 U.S.C. § 1867(a). We note at the outset that his motions to strike the petit jury panel and to dismiss the indictment against him were timely made under that section.

1. *Exclusion of young people.*

Ross asserts that the Plan operates in such a manner that persons 21 to 24 [1]

years old are substantially excluded from jury service. While the argument is not entirely clear, it seems to make two related points.

First, Ross argues that the Plan's use of voter registration lists as the exclusive source of names of potential jurors is in violation of 28 U.S.C. § 1863 (b)(2).[2] This is so, he says because young people are less politically active than their elders and hence less likely to register to vote. This argument is without merit. The Act and its legislative history clearly contemplate that the use of sources other than voter lists will be the exception rather than the rule. 28 U.S.C. § 1863(b)(2); 1968 U.S.Code Cong. & Admin.News, pp. 1793–95. Ross has not alleged that the right of young persons to register to vote has been inhibited in any way. Under such circumstances, exclusive reliance upon voter lists did not violate the Act. United States v. Bennett, 9 Cir., 1971, 445 F.2d 638, 641; Camp v. United States, 5 Cir., 1969, 413 F.2d 419, 421.

Ross' second argument is that persons between the ages of 21 and 24 are systematically excluded from jury panels in the Northern District of California, and thus such panels are not drawn from a fair cross-section of the community in violation of 28 U.S.C. § 1861. At the hearing below, he introduced data purporting to show that, while persons in that age group comprised only 2.67% of the names in the master jury wheel from which his jury was later selected, they represented 10.62% of the population in the relevant geographical area and 8.34% of the registered voters in that area. He contends that these data support, indeed, compel, the inference that young people are improperly excluded from juries. We do not agree.

---

1. Ross actually argued that persons between the ages of 21 and 25 are systematically excluded, which he contends is significant because males over the age of 25 are no longer eligible for the draft. However, his data are broken down in such a manner that only the 21 to 24 age group can be discussed.

2. That section provides in relevant part:
   " . . . The plan shall prescribe some other source or sources of names in addition to voter lists where necessary to foster the policy and protect the rights secured by sections 1861 and 1862 of this title. . . . "

■ Because voter registration lists are the source of names of potential jurors, and because people continue to increase in age after registering persons only recently eligible to vote will always be under-represented in the master jury wheel. This lag does not violate the Act. *Duncan, supra,* 456 F.2d at 1405–1406. A bald comparison of percentages will therefore not support an inference of systematic exclusion. Moreover, Ross' data show that roughly 15% of the persons in the master jury wheel either did not respond to the juror questionnaires which were mailed to them or did not indicate their age on the questionnaire. It may well be that a disproportionate share of these "no responses" were young people; Ross' own evidence shows that they are highly mobile and less inclined to participate in governmental activities. At any rate, Ross makes no attempt to account for these persons, and the validity of his percentages is thus open to considerable question.

■ Ross' argument on this point fails for a second reason. It is well established that jury pools are not required to be a mirror image of the community. Swain v. Alabama, 1964, 380 U.S. 202, 208, 85 S.Ct. 824, 13 L.Ed.2d 759. To establish a violation of section 1861, it is necessary to show the systematic exclusion of an identifiable group within the community. United States v. James, 9 Cir., 1971, 453 F.2d 27, 29. We hold that persons between the ages of 21 and 24 do not constitute such a group.

Both before and since passage of the Act, courts have been requested to recognize "young people" as a distinct group for purposes of determining whether a jury panel includes a fair cross-section of the community.[3] With one exception, which is distinguishable,[4] they have refused to do so. This reluctance is justified in light of the fact that the parameters of such a group are difficult to ascertain, as evidenced by the widely varying ages which have been used to define it, and that its membership and their values are constantly in flux. There appears to be no factor other than age which defines this group, and we can perceive no reason to arbitrarily single out a narrow group of "young persons" as opposed to "middle-aged" or "old" persons for purposes of jury service. In this connection we find it significant that while § 1862 of the Act prohibits excluding a citizen from jury service "on account of race, color, religion, sex, national origin, or economic status" it does not mention youth or age.

■ In an attempt to alleviate these concerns, Ross introduced the testimony of a sociologist and a psychiatrist to the effect that persons between the ages of 12 and 25 represent a subculture within American society which has values and mores distinctly different from those of their elders. Interesting as this evidence is, we are not persuaded by it. Both of Ross' experts conceded that there was only a rough correlation between age and the values and behavioral trends that they described. Moreover, one of them stated that there is a dearth of reliable data on this subject, and the other acknowledged that there is a divergence of values within the youth subculture.

---

3. United States v. Kuhn, 5 Cir., 1971, 441 F.2d 179 (21 to 23 year-olds); United States v. Butera, 1 Cir., 1970, 420 F.2d 564 (21 to 34 year-olds); United States v. DiTommaso, 4 Cir., 1968, 405 F.2d 385, cert. denied, 1969, 394 U.S. 934, 89 S.Ct. 1209, 22 L.Ed.2d 465 (21 to 29 year-olds); King v. United States, 1 Cir., 1965, 346 F.2d 123 (21 to 25 year-olds); United States v. Guzman, S.D.N.Y., 1972, 337 F.Supp. 140 (18 to 21 year-olds, 21–24 year-olds, and 24 to 30 year-olds); United States v. Gargan, W.D.Wis., 1970, 314 F.Supp. 414 (21 to 26 year-olds).

4. The one exception is *Butera, supra.* However, the court in that case was concerned about the size of the excluded group, stating: "We cannot allow the requirement of a 'distinct' group to be applied so stringently with regard to age grouping that possible discrimination against a large class of persons—in our case, those between 21 and 34—will be insulated from attack." 420 F.2d at 570. Obviously, the same considerations do not apply here. Moreover, the court in *Butera* found that the jury was properly drawn.

In such circumstances, we are unwilling to require that persons between the ages of 21 and 24 must be represented in jury pools in exact proportion to their representation in the population as a whole. We have discussed the administrative problems that such a requirement would create in *Duncan, supra,* 456 F.2d at 1406.

2. *Refilling master wheel every four years.*

■■■■ Ross argues that the Plan violates the Act in that it provides for refilling the master jury wheel every four years rather than every two years. He bases this argument upon 28 U.S.C. § 1869(c), which requires that the voter list of the most recent state or federal election be used in filling the wheel, and a statement in the legislative history of the Act that this requires that the list used will be no more than two years old. 1968 U.S.Code Cong. & Admin.News, pp. 1806–07.

The short answer to this argument is that section 1869(c) does not mention when the wheel is to be refilled. At the time of Ross' trial, the Act provided only that the wheel must be emptied and refilled periodically at "specified times," 28 U.S.C. § 1863(b)(4), and the committee report stated that previous bills were found objectionable because they fixed the time for refilling. 1968 U.S. Code Cong. & Admin.News, p. 1800. It thus seems clear that Congress originally intended to allow the districts considerable flexibility in determining when the master jury wheel is to be refilled. The Act required only that when the wheel is refilled, the most recent voter lists be used. *See* United States v. Kuhn, *supra,* note 3, approving a plan with a five year period for refilling.

No matter what period is chosen, there will be some lag and persons who are only recently eligible to vote will be excluded. We are unable to say that four years is an unreasonable period, especially in light of the recent amendment to the Act specifically requiring that the wheels be refilled every four years. Pub.L. No. 92–269, § 3(c) (Apr. 6, 1972).

3. *Use of "off-year" voter lists.*

■■■■ Ross argues that the Jury Commissioner violated the Act by refilling the master jury wheel with names taken from voter lists other than those for the most recent state or federal general election as required by 28 U.S.C. § 1869 (c). It is clear that the required lists were not used. In the 1970 refilling of the master wheel from which Ross' jury was drawn, only two of the five counties in the relevant division provided lists from the 1968 general election. Of the three remaining counties, two provided lists that were current as of January, 1970, and one provided a list that was current as of December 4, 1969. However, while we agree with Ross that this practice violated section 1869(c), it is not such a substantial departure from the Act as would warrant reversal of his conviction.

It is conceded that the Plan could use either lists of persons registered to vote in the most recent state or federal election or lists of persons who actually voted at such election. 28 U.S.C. § 1863 (b)(2). Under California law persons who do not vote in a general election are purged from the rolls unless they request reinstatement within a designated time. Cal.Elect.Code § 383 (West Supp.1972). Thus, those non-conforming lists that were used in the 1970 refilling included the names of most of the persons who actually voted in the 1968 general election, persons who did not vote but requested to be reinstated, and persons who registered since the election (who, we might add, in view of Ross' other arguments in this case, would include young persons not eligible to vote in 1968).

Of those persons who voted in the 1968 election, the lists would not include the names of persons who moved to other counties in California and registered there, persons deceased since 1968, persons convicted of certain crimes since

that time, and persons who requested that their names be removed from the registration list. Cal.Elect.Code §§ 381, 383 (West Supp.1972), §§ 385, 388 (West 1961). Only the latter group would have been eligible for jury service, 28 U.S.C. § 1865, and it is unlikely that many persons request that their registration be cancelled.

In sum, use of the non-conforming lists probably resulted in a larger pool of potential jurors than if the counties involved had provided lists of persons who had actually voted in the 1968 general election. This is certainly consistent with the policies of the Act. We are not impressed by Ross' argument that use of these lists resulted in a biased sample of new registrants because young persons are far less interested in registering for local elections. This lack of interest is not confined to the young. As we observed above, there is no evidence that young people are inhibited from registering to vote, which is all that they need to do to qualify for jury service.

We therefore hold that the departure in this case from the literal requirements of section 1869(c) was the type of harmless error that does not entitle Ross to a reversal of his conviction.

4. *Excuse of students.*

Finally, Ross challenges the provision of the Plan which excuses, upon request, "students in actual attendance at a university, college, academy or school having a regular schedule of classes." The authority for such an excuse is 28 U.S.C. § 1863(b)(5), which provides that the Jury Plan may:

"specify those groups of persons or occupational classes whose members shall, on individual request therefor, be excused from jury service. Such groups or classes shall be excused only if the district court finds, and the plan states, that jury service by such class or group would entail undue hardship or extreme inconvenience to the members thereof, and excuse of members thereof would not be inconsistent with sections 1861 and 1862 of this title."

Ross does not argue that the district court did not find that students would be extremely inconvenienced by jury service or that they were automatically excluded without request. Rather, he contends that this finding is erroneous, and that excusing students in this manner violates section 1861. We do not agree.

The committee report accompanying the Act indicates that section 1863(b)(5) was intended to promote local flexibility. 1968 U.S.Code Cong. & Admin.News, p. 1800. We thus will not reverse a district court's finding that a particular group would be extremely inconvenienced by jury service unless it is clearly erroneous. That is not the case here. Contrary to Ross' assertion, the court could reasonably conclude that missing class and study time is more of a hardship for students than missing work is for other occupational groups. *Cf.* Duncan v. United States, *supra*, 456 F.2d at 1405. This is particularly so in light of the fact that jurors receive a fee for their services, which at least in part alleviates the burden to wage earners. 28 U.S.C. § 1871. Loss of educational time is not so easily compensated.

Similarly, Ross' argument that excuse of students violates section 1861 is without merit. Ross has not shown that students are excluded from jury service; they may serve if they so desire. Moreover, for the reasons discussed above, any resulting underrepresentation of young persons on jury panels does not violate the Act.

Affirmed.