**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Obie GOODLOW, Jr.,
Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Henry Lee WALLACE,
Defendant-Appellant.**

**Nos. 78–1811, 78–1783.**

United States Court of Appeals,
Ninth Circuit.

April 2, 1979.

Certiorari Denied May 29, 1979.
See 99 S.Ct. 2830.

Frank J. Ragen (argued), Michael J. McCabe, San Diego, Cal., for defendant-appellant.

John J. Robinson, Asst. U. S. Atty. (on the brief), Michael H. Walsh, U. S. Atty., John J. Robinson, Asst. U. S. Atty. (argued), San Diego, Cal., for plaintiff-appellee.

Before KENNEDY and HUG, Circuit Judges, and SOLOMON,* District Judge.

KENNEDY, Circuit Judge:

Henry Lee Wallace and Obie Goodlow, Jr. appeal their convictions for narcotics offenses. Wallace was convicted of possession of heroin with intent to distribute, 21 U.S.C. § 841(a)(1), and conspiracy to possess heroin with intent to distribute, 21 U.S.C. § 846. Goodlow was convicted of only the conspiracy count.

### Challenge to Jury Array

Only one argument, among various contentions made by the defendants, is of any substance. Both defendants challenge the petit jury array, on statutory and constitutional grounds. We reject these contentions and affirm the convictions, but brief discussion is appropriate.

The Jury Selection Plan for the Southern District of California has been duly adopted under the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 *et seq.* The Act

* Honorable Gus J. Solomon, United States District Judge for the District of Oregon, sitting by designation.

provides that district plans shall: "specify those groups of persons or occupational classes whose members shall, on individual request therefore, be excused from jury service." 28 U.S.C. § 1863(b)(5). Pursuant to this statutory authorization, the plan for the Southern District of California sets forth in paragraph 17 a number of groups of people whose members may be excused on individual request. As required by the statutory provision, the paragraph includes a specific finding by the district court that jury service by members of the enumerated groups would entail undue hardship or extreme inconvenience for its members. Appellants argue that contrary to the district court's finding, certain groups designated in paragraph 17 would not suffer undue hardship. To be successful, appellants must show that the district court's finding is clearly erroneous. *United States v. Ross*, 468 F.2d 1213, 1219 (9th Cir. 1972), *cert. denied* 410 U.S. 989, 93 S.Ct. 1500, 36 L.Ed.2d 188 (1973). The showing has not been made here.

■ Appellants challenge the exclusion of teachers, attorneys, physicians, pharmacists, nurses, dentists, and sole proprietors. They concede that hardship might be sustained by persons whom these professional groups serve (students, clients, patients, etc.), but argue there is no showing the members themselves will be inconvenienced as required by the statute. While we do entertain some doubts as to the wisdom of permitting members of all of these groups to be excused on request, we conclude from the record before us that appellants have not carried their burden of demonstrating that the district court's findings were clearly erroneous. A House report on the Act specifically identifies doctors and sole proprietors as being among the groups likely to suffer hardship. H.Rep. No. 1076, 90th Cong., 2d Sess., *reprinted in* [1968] U.S.Code Cong. & Admin.News pp. 1792, 1800. The district court could have concluded that, like doctors and sole proprietors, the members of all of these occupational groups may have difficulty finding adequate temporary substitutes when they leave their work or their practices, or may incur extra work or financial losses even if substitutes are obtained. We believe, therefore, that the district court's finding is supportable and not clearly erroneous.

■ Appellants next challenge the excuse of full-time students. We have specifically upheld this exemption. *United States v. Ross*, 468 F.2d 1213 (9th Cir. 1972), *cert. denied*, 410 U.S. 989, 93 S.Ct. 1500, 36 L.Ed.2d 188 (1973). Appellants acknowledge this but argue that due to the delay between the mailing of the jury questionnaires and the calling of the jury panel, some people who were students when they filled out the forms might not be students by the time they would actually be called. Appellants, however, offer no evidence of how long the delay is. They simply assert in the brief that it is "often" an "extensive period." Similarly, they offer no evidence of the numbers of students likely to be affected. The problem of an intervening change in status is not one peculiar to students and some delay is certainly an administrative necessity. Moreover, the Act itself permits the master jury wheel to be refilled only once every *four years*. 28 U.S.C. § 1863(b)(4); *see United States v. Ross, supra*. Appellants have not demonstrated that the problems of delay of which they complain are any more significant than those inherent in this permissible four year delay.

■ The final voluntary excuse challenged by appellants is that for "[w]omen who have legal custody of a child or children under the age of 14 years." They use two lines of attack. First, appellants note that the district court, in its finding of hardship in the jury selection plan, refers only to "*[w]omen* who have legal custody . . . ." (emphasis added), while the jury questionnaire permits "a *person* who has legal custody . . . ." (emphasis added) to be excused. Section 1863(b)(5) provides that a group can be excused "only if the district court finds, and the plan states, that jury service by such class or group would entail undue hardship." Appellants argue, therefore, that the excusing of men who

have children violates the Act since there has been no finding of hardship for them.

The Act provides that an indictment can be dismissed for *substantial* failure to comply with the Act. 28 U.S.C. § 1867(d). Two Fifth Circuit cases have found that technical violations of the Act were not substantial where they did not "operate to frustrate the goals of the Act." *United States v. Evans*, 526 F.2d 701, 706 (5th Cir.), *cert. denied*, 429 U.S. 818, 97 S.Ct. 62, 50 L.Ed.2d 78 (1976). *See United States v. Davis*, 546 F.2d 583, 589 (5th Cir.), *cert. denied*, 431 U.S. 906, 97 S.Ct. 1701, 52 L.Ed.2d 391 (1977). A House Report on the Act stated that the two important principles underlying the Act were the "random selection of juror names from voter lists" and "determination of juror disqualifications, excuses, exemptions, and exclusions on the basis of objective criteria only." H.Rep. No. 1076, 90th Cong., 2d Sess.; [1968] U.S.Code Cong. & Admin.News pp. 1792, 1793. Neither of these objectives is undermined by permitting the excusing of men who take care of young children despite the technical noncompliance with the Act.

■ Next appellants argue that although it is appropriate to excuse persons who have the sole and actual care of small children during the day time, the excuse for those with "legal custody and care" is too broad. The Ninth Circuit has upheld a similar provision in the jury selector plan of the Eastern District of California. *United States v. Eskew*, 460 F.2d 1028 (9th Cir. 1972) (per curiam). Although it is not set forth in the opinion, the exact language of the provision upheld in *Eskew* is that "[a]ll females who have *legal custody* of a child or children under the age of 12 years" may be voluntarily excused. Order Providing Method of Jury Selection, Eastern District of California, I(6) (filed Sept. 29, 1968) (emphasis added). This is virtually identical to the provision challenged in this case giving an excuse to those with "legal custody and care."

■ Appellants also raise a constitutional challenge to the jury array. They take proper note of their entitlement to a jury panel from which no group that is distinct, or cognizable, has been subject to systematic exclusion. In order to establish a prima facie violation, the defendant must show:

(1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, —— U.S. ——, ——, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1978). Quite apart from whether teachers, medical doctors, dentists, and sole proprietors are distinctive and cognizable groups, *see United States v. Kleifgen*, 557 F.2d 1293, 1296 (9th Cir. 1977) (young people, poorly educated people and unemployed people do not constitute cognizable classes); *United States v. Potter*, 552 F.2d 901 (9th Cir. 1977); *United States v. Ross*, 468 F.2d 1213 (9th Cir., 1972), *cert. denied*, 410 U.S. 989, 93 S.Ct. 1500, 36 L.Ed.2d 188 (1973), appellants have completely failed to carry their burden as to the second prong of a prima facie case, that the groups are in fact underrepresented.[1] To succeed appellants first "must demonstrate the percentage of the community made up of the group alleged to be underrepresented, for this is the conceptual benchmark for the Sixth Amendment fair-cross section requirement." *Duren v. Missouri*, —— U.S. at ——, 99 S.Ct. at 668. They then must show the percentage representation of the groups in question on jury venires. *Id.* Appellants have not offered any evidence on either of these points.

---

1. We note at least a surface incongruity in the Government's position that the groups in question are sufficiently distinct to qualify for an excuse under the Act but that they are not cognizable groups for purposes of the constitutional requirement that a jury be drawn from a fair cross section of the community.

*Insufficiency of the Evidence*

 Appellant Goodlow argues the evidence was insufficient to support his conviction. We reject the contention, for our review of the record shows that the jury could find beyond a reasonable doubt that he was a voluntary and knowing participant in the conspiracy.

*Charge to the Jury*

 There remains an argument that may be the ultimate frivolity. It is stated here so the public will know how the judges that it pays must spend part of their time. The appellants argue that it was error to instruct the jury to seek the truth. The attempted dialectic is that the instruction obscured the proper burden of proof. Quite apart from the utter illogic of the premise, it should be noted that the trial court gave repeated emphasis to the Government's burden of proving the defendants's guilt beyond a reasonable doubt. The instruction to seek the truth was correct.

It is a disturbing indictment of our system of justice that an attorney can argue to the court that it is error to instruct the jury to seek the truth. Perhaps both the substance of the argument and the fact that the attorney chooses to make it to the court indicates his agreement with a statement of Socrates that "in the law courts nobody cares a rap for the truth . . . ." Plato, Phaedrus, in Collected Diologues 272d (E. Hamilton ed. 1963). We, who take a grander view of our process, reject the suggestion, and move now to the next case.

Convictions AFFIRMED.