**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Clarence Christian NELSON,**
**Defendant-Appellant.**

No. 83–3024.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 7, 1983.

Decided Oct. 12, 1983.

William J. Glueck, Asst. U.S. Atty., Seattle, Wash., for plaintiff-appellee.

Frank August Peters, Tacoma, Wash., for defendant-appellant.

Before WRIGHT, PREGERSON and FERGUSON, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

This case presents us with three issues, the first two of which are novel: (1) Is reversal required where the venire from which a criminal defendant's petit jury was composed included a juror not randomly selected for that panel? (2) Where guilty verdicts on all 13 counts of the indictment were accepted at defendant's previous trial despite a nonunanimous jury poll as to three counts, does the double jeopardy clause bar retrial of all counts? (3) Should the trial judge at defendant's original trial have recused himself from presiding over the retrial?

FACTS

At his first trial Nelson, a bank president, was convicted on 13 counts of misapplying bank funds, false statements, unapproved issuance of drafts, and conspiracy to commit fraud. This court reversed, *United States v. Nelson*, 692 F.2d 83, 85 (9th Cir. 1982) (*Nelson I*), because the trial judge had accepted a guilty verdict on all counts even though during a post-verdict poll one juror dissented on three counts.

The case was remanded to the same district judge for retrial. He denied defense motions to dismiss the entire 13-count indictment on double jeopardy grounds and to recuse himself voluntarily for bias.

On the trial date, the clerk read the list of potential jurors. A man, James Dorris, stood up and said that his name had not been read but that he had received a telephone call directing him to appear for jury duty. The clerk added his name to the list of potential jurors.

When the judge entered the courtroom, defense counsel objected orally to Dorris as a potential juror because his name had not been on the list. To the judge's questions Dorris responded that he had received a taped telephone message from the court clerk to appear, had checked the message twice, and had served as a juror for that court before. The judge denied the challenge. The defense, without examining Dorris, exercised a peremptory challenge to remove him.

The jury returned a guilty verdict on all 13 counts. At a posttrial hearing on Nelson's motion for a new trial, the judge

noted that Dorris was a qualified juror who had mistakenly reported for Nelson's panel, having been told to report on another day.

## DISCUSSION

### I. *"Volunteer Juror"*

Nelson contends that the denial of his initial challenge of juror Dorris violated his statutory and constitutional right to a "fair and impartial jury selected at random."

■ Criminal defendants have a Sixth and Fourteenth Amendment right to a jury drawn from a fair cross-section of the community. *Taylor v. Louisiana*, 419 U.S. 522, 530, 95 S.Ct. 692, 697, 42 L.Ed.2d 690 (1975). For federal courts, Congress has implemented this right through the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861–1869. The Act declares a federal policy that jury trial litigants "shall have the right to grand and petit juries selected at random from a fair cross section of the community." *Id.* § 1861.

#### A. *Statutory Claim*

■ Challenges to petit jury selection procedures preceding voir dire are within the purview of the Act. 28 U.S.C. § 1867; *United States v. Price*, 573 F.2d 356, 360–61 (5th Cir.1978). If a statutory challenge to petit jury selection succeeds on appeal, the remedy is a new trial. *United States v. Beaty*, 465 F.2d 1376, 1382 (9th Cir.1972). No prejudice to the litigant need be shown. *United States v. Okiyama*, 521 F.2d 601, 604 (9th Cir.1975).

■ A statutory challenge will be allowed only for "substantial failure to comply" with the Act. 28 U.S.C. § 1867(a). The legislative history noted that the definition of "substantial" would be left to the process of judicial decision. H.R.Rep. No. 1076, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Ad.News 1792, 1794 ("House Report").

■ Technical violations are insubstantial where they do not frustrate the Act's goals. *United States v. Goodlow*, 597 F.2d 159, 162 (9th Cir.1979), *cert. denied*, 442 U.S. 913, 99 S.Ct. 2830, 61 L.Ed.2d 280 (1979). The two important principles underlying

the Act were random selection from voter lists and exclusions on the basis of objective criteria only, as the best methods for obtaining jury lists that are a cross-section of the community, allocating jury duty fairly among the citizenry, and eliminating impermissible discrimination and arbitrariness. House Report at 1793–94.

Few cases have discussed "volunteer jurors" under the Act. Two circuits found substantial violations of the Act where volunteers from current or past jury pools were used to compose juries, reasoning that introducing a subjective criterion of willingness to serve affects the random nature of the process. *United States v. Branscome*, 682 F.2d 484, 485 (4th Cir.1982); *United States v. Kennedy*, 548 F.2d 608, 610–12 (5th Cir.1977), *cert. denied*, 434 U.S. 865, 98 S.Ct. 199, 54 L.Ed.2d 140 (1977); *accord, United States v. Layton*, 519 F.Supp. 946, 952, 955–56 (N.D.Cal.1981). *Contra, United States v. Anderson*, 509 F.2d 312, 321–22 (D.C.Cir.1974), *cert. denied*, 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 672 (1975) (using volunteers for a trial that would overrun jurors' normal term did not violate the fair-cross-section right and was merely the obverse of individual examination and excuse for hardship).

■ Dorris was not a "volunteer" in the usual sense, but a conscript who mistook his duty date. Unlike the jurors in the cases that found a substantial violation of the Act, he did not understand himself to be a volunteer, *Kennedy*, 548 F.2d at 610; nor was there any exercise of discretion, *id.* at 612, or extra-statutory, subjective self-screening criterion of willingness to serve, *Branscome*, 682 F.2d at 485. No one deliberately interfered with random selection. *Cf. United States v. Zirpolo*, 450 F.2d 424, 428–29 (3d Cir.1971). There was no offense against the Act's twin goals of fair sampling and objectivity.

It is immaterial that the mistake of Dorris, perpetuated by the clerk and the district judge, unintentionally resulted in a minor deviation from the laws of chance in constituting Nelson's venire. In other circum-

stances, deviations from strict randomness in the selection process have been found insubstantial. As one court noted,

> Analysis of required randomness in a statistical sense misses the mark. The legislative history makes clear that Congress did not intend for 'random selection' under the Act to be defined as 'statistical randomness'. . . . While the methods used here by the jury clerk were 'statistically nonrandom,' there is no showing that they either allowed discriminatory selection of jurors or otherwise prevented jury panels from consisting of fair cross sections of the community.

*United States v. Bearden,* 659 F.2d 590, 602 (5th Cir.1981), *cert. denied,* 456 U.S. 936, 102 S.Ct. 1993, 72 L.Ed.2d 456 (1982). "[T]he essence of randomness is the absence of any arbitrary attempt to exclude a class of persons from the jury." *McClendon v. United States,* 587 F.2d 384, 387 (8th Cir.1978), *cert. denied,* 440 U.S. 983, 99 S.Ct. 1793, 60 L.Ed.2d 244 (1979).

Under the local jury selection plan of the district court, the names of qualified jurors summoned for a six-month term are placed in a panel assignment wheel. From this wheel, separate trial panels are selected by lot. Under this random selection process, Dorris could as easily have been assigned to Nelson's panel as that for the right day. It was sheer chance that he was not, and sheer accident that he eventually was included.

The burden was on Nelson to present facts constituting a substantial violation. The evidence in the record shows no substantial violation.

### B. Constitutional Claim.

Nelson's failure to establish a statutory claim does not end our inquiry. The legislative history of section 1867 explains that "the Act will not preclude any person . . . from asserting rights created by other statutes or from enforcing constitutional rights." House Report at 1806.

To establish a prima facie violation of the fair-cross-section requirement directly under the Constitution, the litigant must show that a distinctive group is not represented on the venire in a reasonable ratio to the percentage of that group in the community population, and that the underrepresentation is due to systematic exclusion from the jury selection process. *United States v. Herbert,* 698 F.2d 981, 984 (9th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 87, 78 L.Ed.2d 95 (1983). The litigant forfeits his claim if he fails to make the prima facie showing in district court. *United States v. Santos,* 588 F.2d 1300, 1303 (9th Cir.1979), *cert. denied,* 441 U.S. 906, 99 S.Ct. 1994, 60 L.Ed.2d 374 (1979).

Nelson made no attempt to satisfy this burden. Instead, he rests his constitutional claim on a purported constitutional right to an impartial jury "selected at random."

There is no constitutional right to a randomly selected jury. *United States v. Hawkins,* 566 F.2d 1006, 1014 (5th Cir.1978), *cert. denied,* 439 U.S. 848, 99 S.Ct. 150, 58 L.Ed.2d 151 (1978). In *Castaneda v. Partida,* 430 U.S. 482, 484 & n. 1, 97 S.Ct. 1272, 1275 & n. 1, 51 L.Ed.2d 498, 504, & n. 1 (1977), the Court distinguished random selection methods from the "key man" system of jury selection relying on commissioners to select prospective jurors personally. Though observing that random methods such as federal courts use might avoid the key-man system's potential for abuse, the Court noted, "The facial constitutionality of the key-man system, of course, has been accepted by this Court." *Id.* at 497 & n. 18, 97 S.Ct. at 1282 & n. 18. *See also United States ex rel. Chestnut v. Criminal Court of New York,* 442 F.2d 611, 616–18 (2d Cir. 1971), *cert. denied,* 404 U.S. 856, 92 S.Ct. 111, 30 L.Ed.2d 98 (1971) (county's voluntary jury selection system did not violate constitutional rights).

While juries must be drawn from a source fairly representative of the community, each jury need not "mirror" the community: "Defendants are not entitled to a jury of any particular composition." *Taylor v. Louisiana,* 419 U.S. 522, 538, 95 S.Ct. 692, 701, 42 L.Ed.2d 690 (1975). The

Constitution does not require that the jury duplicate precisely the community's statistical composition. Some deviation is expected. *United States v. Kleifgen,* 557 F.2d 1293, 1296 (9th Cir.1977).

Several cases have concluded that there was no indication that the use of volunteer jurors diminished likelihood of a fair cross-section. *United States v. Branscome,* 682 F.2d at 485; *United States v. Kennedy,* 548 F.2d at 614; *United States v. Anderson,* 509 F.2d at 321–22; *United States v. Layton,* 519 F.Supp. 946, 956 (N.D.Cal.1981).

■ A criminal defendant has a constitutional right to a fair and impartial jury composed of a fair cross-section of the community. *United States v. Allsup,* 566 F.2d 68, 71 (9th Cir.1977). There is, however, not an iota of evidence that Nelson did not have one or was unjustifiably forced to exercise a peremptory challenge in order to secure one. *See id.*

## II. *Double Jeopardy*

Nelson contends that the double jeopardy clause required dismissal of his indictment. He relies chiefly on *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (plurality opinion), which held that retrial is barred where pre-verdict termination of the proceedings was not for the defendant's benefit. He argues that acceptance of an invalid verdict at the first trial deprived him of his right to have his guilt decided by a particular tribunal. Because of this "valued right," *see Arizona v. Washington,* 434 U.S. 497, 503–04, 98 S.Ct. 824, 829–30, 54 L.Ed.2d 717 (1978), the government is as a rule entitled to only one trial of an accused. *Id.* at 505, 98 S.Ct. at 830.

The government rests its reply on the proposition that no recognized double jeopardy doctrine applies to these facts. It aptly notes that *Jorn,* where the judge declared a mistrial to protect witnesses, is inapposite.

*Nelson I* stated that the trial judge should have either directed further deliberation or dismissed the jury, rather than accepting the verdict. 692 F.2d at 85. Federal Rule of Criminal Procedure 31(d) specifies these as the proper alternatives if the jury poll reveals that concurrence is not unanimous.

■ Dismissing the jury when the poll revealed dissent might have been constitutionally proper as well, in terms of defendant's "particular tribunal" right. If so, it is immaterial for double jeopardy purposes that the judge dismissed the jury *after,* rather than *before,* his mistaken acceptance of the invalid verdict.

■ It would have been proper because Nelson consented to it. His attorney moved for mistrial immediately after the poll, saying it was the "only remedy" for the situation.

Express consent to mistrial, including a defense mistrial motion, usually removes any double jeopardy bar to reprosecution.[1] *United States v. Dinitz,* 424 U.S. 600, 607 (1976); *United States v. Roberts,* 640 F.2d 225, 228 (9th Cir.1981), *cert. denied,* 452 U.S. 942, 101 S.Ct. 3088, 69 L.Ed.2d 957 (1981); *United States v. Smith,* 621 F.2d 350, 351 (9th Cir.1980), *cert. denied,* 449 U.S. 1087, 101 S.Ct. 877, 66 L.Ed.2d 813 (1981). "Such a motion by the defendant is deemed to be a deliberate election on his part to forego his valued right to have his guilt or innocence determined before the first trier of fact." *United States v. Scott,* 437 U.S. 82, 93, 98 S.Ct. 2187, 2194, 57 L.Ed.2d 65 (1978).

While these pronouncements about the defendant's consent were made in instances where his mistrial motion was actually granted, the principle is the same in the problem presented here. Our earlier reversal gave Nelson precisely what he asked for when he moved for a mistrial before the district court at the first trial.

---

1. The only exception is where prosecutorial or judicial conduct intentionally provoked the mistrial motion. *Oregon v. Kennedy,* 456 U.S. 667, 679, 102 S.Ct. 2083, 2091, 72 L.Ed.2d 416 (1982); *Hartley v. Neely,* 701 F.2d 780, 781 (9th Cir.1983). It is inapplicable, because the defense mistrial motion was a response solely to the juror's dissent on the poll.

The defendant has the burden of proof that retrial violated the double jeopardy clause. *United States v. Cox,* 633 F.2d 871, 876 (9th Cir.1980), *cert. denied,* 454 U.S. 844, 102 S.Ct. 159, 70 L.Ed.2d 130 (1981). Nelson has failed to establish this. Retrial after jury disagreement does not normally give rise to a double jeopardy claim. *United States v. Carnes,* 618 F.2d 68, 69 (9th Cir.1980), *cert. denied,* 447 U.S. 929, 100 S.Ct. 3028, 65 L.Ed.2d 1124 (1980).

### III. *Recusal*

Before the second trial, the defense unsuccessfully moved to have the district judge voluntarily recuse himself. The motion alleged that the judge had formed a strong opinion of Nelson's guilt during the first trial, as evinced by a hasty acceptance of an invalid verdict, and would not be able to set his opinion aside.

A judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Nelson contends that the judge's failure to recuse himself from presiding over the second trial violated both section 455(a) and the due process guarantee of a trial that is not only fair but reasonably appears to be so.

The test for disqualification under section 455(a) is an objective one: whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned. *United States v. Conforte,* 624 F.2d 869, 881 (9th Cir.1980), *cert. denied,* 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980).

Judge Tanner's acceptance of an invalid guilty verdict in the first trial did not necessitate recusal. Adverse rulings do not constitute the requisite bias. *United States v. Azhocar,* 581 F.2d 735, 739 (9th Cir.1978), *cert. denied,* 440 U.S. 907, 99 S.Ct. 1213, 59 L.Ed.2d 454 (1979), even if they were erroneous, *Hagans v. Andrus,* 651 F.2d 622, 628 (9th Cir.1981), *cert. denied,* 454 U.S. 859, 102 S.Ct. 313, 70 L.Ed.2d 157 (1981). The Supreme Court has observed that having the same judge retry a case after rever-sal is not violative of due process. *Withrow v. Larkin,* 421 U.S. 35, 57, 95 S.Ct. 1456, 1469, 43 L.Ed.2d 712 (1975).

Nelson argues that it is an affront to the American system of justice to have a judge retry a case after he has announced in open court his own belief that the defendant is guilty. He alleges that the district judge made such an announcement when sentencing Nelson after the first trial. As the defendant did not provide a transcript of the sentencing proceeding, this comment is not in the record. Nelson would have us infer that it occurred because the trial judge failed to deny defense counsel's allegation to this effect in the affidavit accompanying the recusal motion.

We need not decide whether such an inference is warranted. That judges predictably reach conclusions on the evidence put before them does not prevent them from affording a defendant a fair and impartial trial, therefore such an inference is not sufficient ground for recusal. *United States v. Sutherland,* 463 F.2d 641, 650 (5th Cir.1972), *cert. denied,* 409 U.S. 1078, 93 S.Ct. 698, 34 L.Ed.2d 668 (1972); *Hanger v. United States,* 398 F.2d 91, 100–01 (8th Cir.1968), *cert. denied,* 393 U.S. 1119, 89 S.Ct. 995, 22 L.Ed.2d 124 (1969); *United States v. Bolden,* 355 F.2d 453, 456–57 (7th Cir.1965), *cert. denied,* 384 U.S. 1012, 86 S.Ct. 1919, 16 L.Ed.2d 1018 (1966).

As for Nelson's contention that the judge's allegedly emotional response to the recusal motion supports the propriety of recusal, this court rejected a very similar argument in *Los Angeles Trust Deed & Mortgage Exchange v. SEC,* 285 F.2d 162, 173 (9th Cir.1960), *cert. denied,* 366 U.S. 919, 81 S.Ct. 1095, 6 L.Ed.2d 241 (1961). Nelson has made a weaker case than those unsuccessful appellants, as he has not produced any record citations to demonstrate that the alleged bias actually interfered with the new trial. The judge's failure to recuse himself here was not an abuse of discretion.

### CONCLUSION

The judgment appealed from is AFFIRMED. The mandate will issue at once

**322**

and the district judge may wish to reconsider the bail status of the defendant.