**UNITED STATES of America,**
**Appellee,**

v.

**Frank Anthony WARE, Appellant.**

**No. 72–1604.**

United States Court of Appeals,
Ninth Circuit.

Jan. 31, 1973.

John Caughlan (argued), of Caughlan & Holley, Seattle, Wash., for appellant.

Thomas P. Giere, Asst. U. S. Atty. (argued), Susan Barnes, Asst. U. S. Atty., Stan Pitkin, U. S. Atty., Seattle, Wash., for appellee.

Before LUMBARD,* HAMLEY, and WALLACE, Circuit Judges.

LUMBARD, Circuit Judge:

Frank Anthony Ware appeals from a judgment of the District Court for the Western District of Washington entered pursuant to a jury verdict of guilty. Ware was found guilty and sentenced on four counts of violating the Selective Service Act, two for failing to report for an Armed Forces physical examination and two for failing to complete such an examination. 50 U.S.C. App. § 462(a). He was sentenced to one year of imprisonment for each count, the terms to run concurrently.

Having been reclassified I–A from II–S for failing to make normal progress as a college student, on January 7, 1970, Ware was ordered by his draft board to report on January 28, 1970, for a physical examination at an Armed Forces Examining and Entrance Station. His failure to comply with this order was the basis for the first count of the indictment. On March 18, 1970, Ware was again ordered to report for a physical examination, to be given on April 7, 1970, and he again failed to comply. This was the basis for the second count of the indictment. No question has been raised about appellant's knowledge and receipt of these orders.

The draft board proceeded to inform the United States Attorney of Ware's acts of noncompliance. Instead of immediately seeking an indictment against him, the United States Attorney's Office persuaded the draft board to offer Ware an additional opportunity to comply with the law. Accordingly, the board on September 9, 1970, once again ordered Ware to report for his physical, this time on September 21, 1970. On the appointed day, Ware reported but refused to submit to the examination. This was the ground for the third count of the indictment.

The Assistant United States Attorney who was handling the case then discussed with Ware's attorney the possibility of affording yet another opportunity for Ware to report and take his preinduction physical examination. The assistant agreed that he would not seek an indictment for the previous violations if Ware would report and cooperate in order to complete the examination.

* The Honorable J. Edward Lumbard, Senior United States Circuit Judge, United States Court of Appeals for the Second Circuit, sitting by designation.

Thus, for the fourth time, appellant was ordered by his draft board to report for a physical examination to be given on February 8, 1971.

Appellant reported to the examining station as ordered and completed part of the initial paperwork that was required. Before proceeding to complete the examination, Ware, along with several other registrants, was given a tag to be worn around his neck. This tag was marked "AQB," and signified that, because he had earlier failed the Armed Forces Qualification test, he and other similarly situated registrants would be required to take the Army Qualification Battery before they completed the examination. Appellant refused to wear the tag, saying something to the effect of "I am not in your army. I don't have to do this." He was advised what the tag stood for and that he had not yet completed processing. When appellant persisted in his refusal to wear the tag, he was told that "he could leave the building if he did not want to cooperate." He then left and did not complete the examination.

After the failure of this fourth attempt to bring appellant into compliance with the law, the United States Attorney's Office presented the case to the grand jury, which on February 10, 1971, two days after Ware's fourth failure to take the physical, returned the indictment charging Ware with four counts of violating the Selective Service Act.

Appellant urges several grounds for reversal of the district court. His initial argument is that he was entitled to a dismissal of the indictment and that the district court erred in denying his motion to that effect. This assertion has two aspects. First, appellant argues that the Government should be estopped from pursuing Counts I, II, and III because Ware made a good faith effort to comply with the agreement, under which the Assistant United States Attorney

agreed not to pursue these charges, but was prevented from carrying out his part of the agreement by the improper and unreasonable act of the official who told Ware to leave the examining station. Second, appellant argues that a conviction under Count IV cannot be sustained because he was not informed at the time of his refusal to cooperate with the examining official that this constituted a felony under the Selective Service Act, as required by applicable regulations.[1]

■ We reject this contention. Even if we were to hold that the agreement between appellant and the Assistant United States Attorney could estop the Government from pursuing Counts I, II, and III, it is clear that appellant here did not perform his part of the agreement since he did not submit to the physical examination on February 8, 1971. The assertion that Ware was prevented from complying has no merit. The requirement of wearing the "AQB" tag was shown to be supported by good reasons, primarily to expedite the examining process. Therefore, the official's order to wear the tag could hardly be deemed to have prevented Ware from completing the examination. He was told he could leave if he refused to cooperate. The fact that he then did leave speaks for itself with regard to his good faith in attempting to comply with his agreement with the United States Attorney. Hence, there is no basis for any assertion of estoppel against the Government and the district court properly refused to dismiss the indictment with respect to Counts I, II, and III.

■ Appellant makes a related argument that, by giving Ware additional opportunities to bring himself into compliance with the Act, the Government effectively waived all preceding violations of the Act. Therefore, appellant argues that he was denied a fair trial because

1. AR 601–270, par. 3–31(2) states in pertinent part:

A registrant who refuses to comply with instructions, rules or procedures prescribed for registrant processing, or who refuses to take part in some, or all, of the prescribed processing, testing, or examination will be informed that his refusal constitutes a felony under the provisions of the Military Selective Service Act of 1967.

of the multiplicitous indictment that required him to defend four charges instead of one. Appellant has cited us to no authority in support of his waiver proposition and we conclude that it is wholly without merit. Indeed, even if Ware had complied with the law on his fourth chance, on February 8, 1971, which he did not do, this would not have eliminated the earlier noncompliance, for "[d]efendant has no more right to absolve himself of the crime he has committed than has any other law violator, as for example one guilty of larceny by making restitution." United States v. Weissman, 434 F.2d 175, 179 (8th Cir. 1970). And the case for waiver is even weaker here since Ware did not use the fourth chance to bring himself into compliance.

■ With regard to Count IV, the district court also properly denied Ware's motion to dismiss the indictment. The regulation that appellant claims was violated when he was not informed that his refusal to cooperate on February 8, 1971, violated the Selective Service Act is issued by the Department of the Army. It is not one of the administrative regulations issued under the Selective Service Act. No analogous requirement appears in that part of the administrative regulations that prescribes the procedures for dealing with delinquents. (Part 1642). Moreover, even if the procedures there prescribed were not complied with, Reg. § 1642.3 clearly states that:

> Compliance by a local board or any other agency of the Selective Service System with any or all of the procedures prescribed by the regulations in this part is not a condition precedent to the prosecution of any person under the provision of [50 U.S.C. App. § 462].

The Army regulation on which appellant relies is of a lesser dignity than the administrative regulations. By refusing to submit to the physical examination on February 8, 1971, appellant violated the Selective Service Act. The Army regulation involved is merely a housekeeping measure and its breach cannot operate to vitiate the grand jury's indictment of appellant for that offense.

Similarly, the requirements of Chernekoff v. United States, 219 F.2d 721 (9th Cir. 1955) are not applicable here. That case was concerned with a registrant who refused to be inducted. The court held that the defendant, even though he had indicated that he would not comply, should have been given the warnings prescribed by the Army regulations and the opportunity to take the symbolic "step forward." The effect of that holding is that a registrant's declaration of his intent not to submit to induction does not obviate the necessity of giving him a "last clear chance" either to step forward or not. In essence, the registrant has not violated the act, notwithstanding his declarations of intent, until he has refused to step forward, for this is the line of demarcation between civilian and military status, which the Selective Service Act requires him to cross.

The *Chernekoff* reasoning is inapposite here. Appellant was given an opportunity to submit to the physical and he refused to do so. Nothing more was required to make out a violation of the Act. He either cooperated or he did not. Moreover, there was ample evidence that Ware was fully aware of the consequences of his refusal to submit to the examination, since, when he refused to submit several months earlier, he had had the consequences thereof fully explained to him. Therefore, the district court properly refused to dismiss Count IV of the indictment.

■ Appellant's second major contention revolves around his assertion that the duty to submit to a physical is a continuing one and that only one prosecution and one punishment will lie for breach of that duty. He submits that it would not be permissible to prosecute a defendant for four violations and to sentence him to four consecutive five-year terms. By parity of reasoning, he concludes that it would be equally improper to place upon a defendant the burden of

defending four separate charges instead of one. However, we do not understand how this reasoning can aid appellant under the circumstances of this case; for even if there .is one continuous duty to submit to a physical examination, each act of noncompliance is evidence of a breach of that duty. Therefore, since Ware received concurrent sentences of one year for each count, wè fail to see how he can claim to have been prejudiced just because each act of noncompliance was stated in a separate count.[2] Hence, the fact that the indictment charged four violations did not operate here to prejudice appellant or deny him a fair trial.

As a third ground for reversal, appellant argues that he was denied a fair trial by the district court's refusal to permit direct voir dire of the members of the jury by counsel. Rule 24(a) of the Federal Rules of Criminal Procedure provides that:

> [t]he court may permit the defendant or his attorney and the attorney for the government to conduct the examination of prospective jurors or may itself conduct the examination.

Appellant does not suggest that the district court refused to ask questions of the panel that were requested by appellant or that the scope of the voir dire was otherwise înadequate. The district court did not abuse its discretion by conducting the voir dire of the jury itself. Therefore, we reject appellant's contention.

Appellant also asserts as error the failure of the district court to give certain instructions requested by appellant, and the giving of one instruction objected to by appellant. Generally, the instructions that are in dispute relate to the issue of Ware's *mens rea* at the time of his refusal to cooperate with the examining officials on February 8, 1971. On this general issue, the district judge gave the following instruction addressed to all four counts, which was reinforced by specific instructions with regard to each individual count:

> To constitute each crime charged in the indictment there must be the joint operation of two essential elements, the omission of a duty required by law, and an intent to omit that duty.
>
> Before a defendant can be found guilty of a crime the prosecution must establish beyond a reasonable doubt that under the statute described in these instructions defendant was under a legal duty to perform certain acts, and that he intentionally failed to perform that duty.

We feel that this correctly stated the issue to the jury.

The instructions requested by Ware related to evidence that appellant presented to negate a finding of intent. The record is clear that appellant was given an opportunity to argue these evidentiary issues before the jury. We cannot say it was prejudicial error for the district court to decline to give any more detailed instructions on this issue. We also find no error in the court's instruction that the jury should not consider whether Ware was in fact physically or mentally unsuitable for military service.[3]

2. We do not reach the question of whether it would in fact have been permissible for the district judge to have sentenced Ware to consecutive terms.

3. The instruction objected to directed the jury not to consider Ware's actual physical or mental unsuitability for military service in determining their verdict with regard to his refusal to cooperate on February 8, 1971. This did not preclude the jury from considering Ware's knowledge or belief in his unsuitability in determining the issue of intent. Thus, as we have indicated, we do not find this to have been prejudicial error. Moreover, although the Government did not raise this in its brief, we cannot find any place in the record where appellant objected to this instruction before it was delivered, or even before the verdict was rendered. See Rule 30 of F.R.Crim.P.

■ Appellant also argues that the jury should have been recautioned in a concluding instruction about the strong danger of prejudiced attitudes in this case. In light of the extensive voir dire on this question conducted by the judge at the beginning of the trial, we cannot say that the refusal to give this requested instruction was error.

The final assertions of appellant challenge the jury panel before which he was tried. Prior to the commencement of the voir dire of prospective jurors, in accordance with the Jury Selection and Service Act of 1968 (Jury Act), 28 U.S.C. § 1867, appellant filed a timely objection to the jury panel.[4] The district judge denied appellant's challenge to the panel, but held several post-trial hearings to permit appellant to present, in connection with his motion to arrest judgment and for a new trial, material substantiating his jury challenge. At the end of these hearings, the district judge again denied appellant's challenge as well as the motion to arrest judgment and for a new trial.

■ Appellant has made essentially two challenges to the jury panel: 1)

since the jury plan for the Western District of Washington called for the refilling of the master jury wheel every four years, the jury that tried appellant was selected from a group drawn from a voter registration list in 1968, effectively excluding from the panel all persons under the age of 25; and 2) the effect of using voter registration lists, without supplementation, in filling the master jury wheel resulted in the selection of a jury in which the non-white population of the six counties from which the jury was drawn was so grossly underrepresented as to violate the requirements of equal protection and the sixth amendment.[5] Appellant's contentions raise several statutory and constitutional arguments, many of which have already been considered by this Circuit.

■ Appellant's initial argument is that the jury plan violates the Jury Act because it calls for the refilling of the jury wheel every four years instead of every two years. This is a question of the proper construction of the Jury Act and has been resolved by this Circuit adversely to appellant in United States v. Ross, 468 F.2d 1213 (9th Cir. 1972).

---

4. 28 U.S.C. § 1867(d) appears to require that such a motion be accompanied by "a sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of this title." Section 1867(e) indicates that compliance with § 1867 is the exclusive means by which a defendant can challenge the jury panel. Although it does not appear that appellant complied with the requirement of a sworn statement, the Government has not suggested to us that we should decline to consider appellant's challenge on this ground. Moreover, at the time that the challenge was made, counsel for appellant stated orally the grounds therefor. In light of this statement by counsel and the Government's failure to raise the issue before us, we will proceed to consider the merits of appellant's challenge.

5. Equal protection and sixth amendment issues are also involved with regard to the

first challenge. Moreover, both challenges raise the question of whether the plan violated §§ 1861 and 1862 of the Jury Act, requiring that the jury be selected from a fair cross-section of the community and prohibiting discrimination on account of race in the selection of juries, respectively. We decline to analyze this case as one in which appellant is asserting the equal protection rights of those claimed to be excluded from jury service. See Carter v. Jury Commission, 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549 (1970). The issue is more properly considered in the context of appellant's equal protection rights, Smith v. Texas, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84 (1941), and sixth amendment right. Of course, since the federal Government is involved here, any equal protection claim must be derived from the due process clause of the fifth amendment. Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

Appellant's second contention is that the plan is statutorily and constitutionally deficient because, as a result of refilling the jury wheel every four years, it operated here to exclude from the panel all persons between the ages of 18 and 25. This question has also been considered and resolved in this Circuit. Since, at the time of the trial, the Jury Act limited jury service to persons over 21 years of age, 28 U.S.C. § 1865(b)(1),[6] any challenge to the exclusion of persons under 21 years of age must be rejected on the authority of United States v. Duncan, 456 F.2d 1401, 1404–1405 (9th Cir. 1972). See also United States v. McVean, 436 F.2d 1120, 1122 (5th Cir. 1971), cert. denied, 404 U.S. 822, 92 S.Ct. 45, 30 L.Ed.2d 50 (1971). With respect to the asserted exclusion of persons between the ages of 21 and 25, appellant's challenge must be rejected on the authority of United States v. Ross, *supra*, and United States v. Duncan, *supra*, 456 F.2d p. 1406.

Appellant's final challenge to the jury panel was that the plan under which it was selected resulted in a gross underrepresentation on juries of the non-white population in the community. Appellant had the burden of showing that the plan resulted in the systematic exclusion of an identifiable group within the community. United States v. Parker, 428 F.2d 488, 489 (9th Cir. 1970); United States v. James, 453 F.2d 27, 29 (9th Cir. 1971). Although the district court permitted appellant ample time in which to present material to substantiate this challenge, we agree with the district judge that appellant did not carry his burden. Therefore, we conclude that appellant's challenges to the jury panel were properly denied.

Affirmed.

6. After the trial in this case, the Jury Act was amended to permit jury service by those 18 years of age and older. Public Law 92–269; 86 Stat. 117. Approved April 6, 1972.