UNITED STATES of America

v.

**Byron Hart ARNETT.**

**Crim. No. 70–284–W.**

United States District Court,
D. Massachusetts.

Nov. 10, 1970.

OPINION

WYZANSKI, Chief Judge.

Defendant has moved to dismiss the indictment on nine separate grounds of which the sixth reads as follows:

"6. The indictment was returned by a Grand Jury that was unfairly constituted in violation of the Defendant's rights under the Fifth Amendment to the Constitution of the United States in that

a. The Grand Jury selection process arbitrarily discriminates against the following classes of people:

(1) Those citizens between the ages of 18 and 25;

(2) Those citizens not residing in this judicial district for more than one year;

(3) Those citizens who have been charged with a criminal offense;

(4) Those citizens who have been convicted of misdemeanors punishable by imprisonment of more than one year;

(5) Those citizens who have been convicted of felonies;

b. The Grand Jury selection process arbitrarily excuses on request the following classes of people:

(1) Ministers and other religious clergy;

(2) Physicians and surgeons;

(3) Dentists;

(4) Pharmacists;

(5) Nurses;

(6) Teachers;

(7) Lawyers;

(8) Sole Proprietors of Businesses;

(9) Persons to whom no public or private transportation is available;

c. The Grand Jury selection process arbitrarily excuses all of those persons who fail to return the jury qualification forms.

d. As a result of the Grand Jury selection process used here, it is less likely that young, poor, and female persons will be chosen for Grand Jury service, and it is least likely that those most educated and concerned with ideals, e. g., clergy, teachers, students, and professional persons, will be chosen, thus substantially prejudicing the cases of those men refusing induction, particularly those who refuse for reasons of conscience, as did the Defendant herein.

e. Students are postponed in violation of the Plan For Random Selection of Jurors, and in further pursuit of the exclusion of possibly sympathetic persons to sit in judgment in these cases involving young idealists."

It is agreed that the grand jury which indicted defendant was selected pursuant to the Jury Selection Plan for the District of Massachusetts (hereafter called "the Plan"), prepared by the judges of this Court after the enactment of the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861–1874 (hereafter called "the Act"), and approved by the September 23, 1968 order of a reviewing panel in accordance with the Act, 28 U.S.C. § 1863(a). That plan provides for jury rolls to be based exclusively upon Massachusetts voter registration lists, and provides for certain disqualifications, exemptions, and excuses. So far as here material, the Plan provides:

"3. *Random Selection from Voting Lists.*

(a) The Court, having found that voting lists prepared annually by the

registrars of voters pursuant to Mass. G.L. ch. 51 § 55 represent a fair cross section of the community in this District, the names of persons to be considered for service as jurors on or after the effective date of this plan shall be selected at random from the voting lists of all the cities and towns within the relevant division."

"6. *Qualifications, Exemptions, and Excuses from Jury Service.*

(a) *Qualifications.* . . . Any person shall be deemed qualified for jury service unless he

(1) is not a citizen of the United States twenty-one years old who has resided for a period of one year within the judicial district;

. . .

(5) has a charge pending against him for the commission of, or has been convicted in a State or Federal court of record, of a crime punishable by imprisonment for more than one year and his civil rights have not been restored by pardon or amnesty."

. . .

(c) *Excuses.* The Court, acting under 28 U.S.C. § 1863(b) (5), finds that jury service by members of the following occupational classes or groups of persons would entail undue hardship or extreme inconvenience to the members thereof, and that the excuse of such members will not be inconsistent with the Act, and shall be granted upon individual request:

. . .

(2) Ministers of religion of any denomination, and members of religious orders, lay or clerical, actually following their calling;

. . .

(4) Registered physicians, surgeons, dentists, pharmacists, and nurses actually engaged in the practice of such profession;

. . .

(6) Teachers at a University, College, Academy, or other school having a regular schedule of classes;

(7) Attorneys at law;

(8) Sole proprietors of businesses;

(9) Any person who resides more than 80 miles or more than two hours travel time from the place of holding court, or any person to whom no private or public transportation is available."

■ Defendant's motion to dismiss rests solely on constitutional grounds. Defendant has not claimed that there is a violation of either the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861–1874 or the Jury Selection Plan for the District of Massachusetts. Indeed a challenge on statutory grounds would be untimely. The grand jury returned the indictment on September 10, 1970; the defendant could have discovered each of the alleged defects in the constitution of the grand jury by looking at the Plan; but the defendant did not move to dismiss the indictment until October 19, 1970. This delay was longer than is permitted by 28 U.S.C. § 1867(a) [1], and is a bar to a statutory, though not to a constitutional challenge. 28 U.S.C. § 1867 (e).[2]

1. "In criminal cases, before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury."

2. "The procedures prescribed by this section shall be the exclusive means by which

a person accused of a Federal crime, the Attorney General of the United States or a party in a civil case may challenge any jury on the ground that such jury was not selected in conformity with the provisions of this title. Nothing in this section shall preclude any person or the United States from pursuing any other remedy, civil or criminal, which may be available for the vindication or enforcement of any law prohibiting discrimination on account of race, color, religion, sex, national origin or economic status in the

■ It has long been settled that while a defendant has a constitutional right not to be indicted except by a grand jury based on a jury roll "drawn from a cross-section of the community," Thiel v. Southern Pacific Co., 328 U.S. 217, 220, 66 S.Ct. 984, 985, 90 L.Ed. 1181, the constitutional cross section is not a scientifically accurate or true cross section since it need not "be a perfect mirror of the community or accurately reflect the proportionate strength of every identifiable group." Swain v. State of Alabama, 380 U.S. 202, 208, 85 S.Ct. 824, 829, 13 L.Ed.2d 759.

■ Earlier this year, the Court of Appeals for this Circuit held that even if an *identifiable group*, or as it is sometimes called a *cognizable group*, is *substantially* underrepresented in the jury roll, defendant's constitutional right has not been denied *if the government bears* the burden of proving that the underrepresentation was not caused by invidious, that is, purposeful, discrimination. United States v. Butera, 420 F.2d 564, 568, (1st Cir.). In the *Butera* case young persons between 21 and 34, women, and those not having college or high school education were proved to be very substantially underrepresented, yet since the government proved that "the Jury Commissioners acted at all times in good faith . . . and in conscientious accordance with the applicable statutes and the . . . 1960 Judicial Conference Report," (p. 573) the court concluded that there was not such a purposeful discrimination as to be constitutionally objectionable.

■ In the case at bar we may assume that defendant could prove a *prima facie* case of discrimination against the selection of young persons as jurors.[3]

---

selection of persons for service on grand or petit juries."

3. Defendant offered certain tables to prove that those who in 1969 and 1970 were called for, and who actually served on, the 8 grand juries during those two years were not a fair cross section of the community. His object was to show that with respect to age, race, education, sex, occupation, and income, the jury was not drawn from a fair cross section of the community.

Most of the proffered tables do not furnish appropriate data. With respect to each of the groups alleged to be victims of impermissible discrimination (e. g., young persons, non-whites, persons of advanced education, professional persons, and poor persons) the proper comparison is between the percentages of that group in (1) the source from which jurors are drawn, and (2) that part of the population eligible for jury duty. United States v. Butera, 420 F.2d 564, 569–570, footnote 13 (1st Cir.).

We may for present purposes assume that persons called in 1969 and 1970 for grand jury duty are fairly representative of the source from which jurors are drawn. However, this assumption should not be regarded as a precedent in a case where the issue is more doubtful.

We may also assume that there is here no significant difference between the population of Massachusetts and the persons in Eastern Massachusetts eligible for jury duty. See United States v. Butera, *supra*. But we do *not* assume that there is no significant difference between the population of Boston and the persons in Eastern Massachusetts eligible for jury duty. Almost certainly, Boston has an unusually high proportion of non-whites, of students, of young employed persons, of persons illiterate in the English language, and of persons resident for less than one year.

Table 14 which might be admissible shows these statistics with respect to age:

| Age | Massachusetts population according to census | Called to serve on 8 grand juries |
|---|---|---|
| 21–24 | 10.2% | 5.3% |
| 25–44 | 36.3% | 36.4% |
| 45–64 | 35.2% | 47.8% |
| 65+ | 18.3% | 10.5% |

---

Table 15 shows that although females constitute 53.4% of the population of Massachusetts, only 44.2% of those called for grand jury duty were females.

But even if this be assumed, the government has borne the burden of proving that there was no purposeful discrimination within the *Butera* doctrine.

The Jury Selection Plan for this District, as already noted, was formulated in accordance with The Jury Selection and Service Act of 1968. That Act directs that the Plan shall utilize as the primary source of jurors "the voter registration lists or the lists of actual voters." 28 U.S.C. § 1863(b) (2). In so directing Congress was aware of the general value of such lists as representative of a fair cross section of voters.[4] More significantly, Congress, while recognizing that such lists were in a sense discriminatory,[5] regarded the discrimination as consistent with the policies of the Act because voting lists objectively eliminated persons who were unqualified to vote or who had little concern with civic affairs.[6]

■■ Although the Act directs that voter registration lists shall be supplemented where necessary to foster the policy and protect the rights secured by the Act, 28 U.S.C. § 1863(b) (2), the text of the statute and its legislative history make it clear that Congress did not intend that voter registration lists should be supplemented to cover deficiencies attributable to the indifference or neglect of persons permitted to register, [see footnote 5, above], or the absence from voting lists of citizens who had not been local residents for a period of one year. [*Ibid.*] If voter registration is generally open to qualified jurors, and persons are not excluded from voter registration lists by invidiously discriminatory laws, customs, or practices, "it has become well-established that voter registration lists are appropriate for use in jury selection systems." United States v. Butera, *supra*, at p. 573, and cases cited at footnote 21.

■ The Act as applied is not unconstitutional on the ground that 28 U.S.C. § 1865(b) (1) purposefully discriminates against citizens under 21. There must be a lower age limit. At least as long as the basic source of juror names discriminates against those who have the requisite qualifications for jury service but who do not register or vote. This is unfair, however, because anyone with minimal qualifications—qualifications that are relevant to jury service—can cause his name to be placed on the lists simply by registering or voting. No economic or social characteristics prevent one who wants to be considered for jury service from having his name placed in the pool from which jurors are selected."

In short, all that the proffered evidence shows is that here the disparities are far less evident than they were in the *Butera* case.

4. With respect to such lists S.Rep.No.891, 90th Cong., 1st Sess., p. 16, states: "These lists provide the widest community cross section of any list readily available. Census data quickly become out of date and are not suitable. In the words of Attorney General Ramsey Clark presenting the administration's views:

We looked at every type of list we could find. We looked at post office addresses, at Civil Service Commission lists, at Social Security lists, and we considered telephone books, and a city directory sort of list, and we couldn't find any list that would be across the the country nearly as good as the voter list.[10]

Prof. Harry Kalven and Prof-Statistician Hans Zeisel were among the many witnesses who agreed:"

"[10] Hearings, 'Federal Jury Selection,' at p. 43."

5. See S.Rep. No. 891, 90th Cong., 1st Sess., p. 17, and H.Rep. No. 1076, 90th Cong., 2nd Sess., p. 5, which in identical words state: "In a sense the use of voter lists

6. In connection with what became The Jury Selection and Service Act of 1968, S. Rep. No. 891, p. 22, and H.Rep. No. 1076, p. 6, stated: "As noted earlier, significant provisions are contained in S. 989 that substantially guarantee juror competence, and the existence of these provisions buttresses the conclusion that subjective screening is unnecessary. The initial line of defense against incompetence is the requirement that voter lists be used as the primary source of potential jurors. Voter lists contain an important built-in screening element in that they eliminate those individuals who are either unqualified to vote or insufficiently interested in the world about them to do so."

as 21 is the lower age limit for voting, 21 is a reasonable figure.

■ The Act as applied is not unconstitutional on the ground that 28 U.S.C. § 1865(b) (1) purposefully discriminates against persons with a local residence of less than one year. The residential requirement "assures some substantial nexus between a juror and the community whose sense of justice the jury as a whole is expected to reflect." S.Rep. No. 891, 90th Cong., 1st Sess. Improved Judicial Machinery for the Selection of Federal Juries, p. 22; H.Rep.No. 1076, 90th Cong., 2nd Sess. Federal Jury Selection Act, p. 6.

■ The Act as applied is not unconstitutional on the ground that 28 U.S.C. § 1865(b) (5) disqualifies those convicted of or charged with certain crimes. The disqualification is intended to assure the "probity" of the jury. *Ibid.*

■ The Plan is not unconstitutional on the ground that by using as a source of jurors the Massachusetts voter registration lists it eliminates paupers. This is clearly a matter *de minimis*. Moreover, it is doubtful if paupers are a cognizable group entitled to be taken into account in a cross section of the community.

■ The Plan is not unconstitutional on the ground that it provides that certain professional classes shall be excused from jury duty. The excuses reflect a rational accommodation between the community's need for jurors and its needs for uninterrupted religious, medical, teaching and like services. If persons of professional background be regarded as a cognizable group, that group is adequately represented by persons from disciplines which are not made a basis for excuse from jury duty. In any event, the discrimination is not "purposeful," in the sense that it is designed to preclude a fair cross section.

■ The sum of the matter is that there is no constitutional objection to using, as an exclusive source of jurors, voter registration lists which do not themselves reflect purposeful discrimina-

tion. Nor is there any constitutional objection to excusing from jury duty classes of persons who are meeting community needs of importance at least comparable to jury duty.

. Motion to dismiss the indictment denied.