[L.A. No. 30215. In Bank. July 19, 1974.]

LAWRENCE M. ADAMS, as Jury Commissioner, etc., Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
IRVING BEALE, Real Party in Interest.

## COUNSEL

Robert G. Berrey, County Counsel, and Lloyd M. Harmon, Jr., Deputy County Counsel, for Petitioner.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, A. Wells Petersen and Jay M. Bloom, Deputy Attorneys General, as Amici Curiae on behalf of Petitioner.

Charles R. Khoury, Jr., for Respondent.

No appearance for Real Party in Interest.

## OPINION

**CLARK, J.**—The Jury Commissioner of San Diego County seeks writ of mandate compelling respondent superior court to set aside an order declaring Code of Civil Procedure section 198 unconstitutional and directing him to select petit jurors without regard to the section's one-year residency requirement.[1] We conclude the requirement does not violate due process or the equal protection guarantees of the Fourteenth Amendment to the United States Constitution or article I, sections 11 and 21 of the California Constitution.

A criminal defendant in respondent court challenged the jury panel, claiming the residency requirement was invalid. The trial court sustained the challenge, directing the jury commissioner to furnish a jury panel "from which no jurors have been excluded on residential grounds" other than the 30-day minimum residence requirement qualifying one to vote.[2] (Elec. Code, § 203.) The order also directed the jury commissioner to furnish such panels for all future civil and criminal cases.

We must first consider the jurisdiction of the superior court to order the jury commissioner to change his selection procedure. It is argued that since the commissioner, appearing only as a witness, was not a "party"

---

[1]Unless otherwise specified, all statutory references will be to the Code of Civil Procedure. Section 198 provides in pertinent part: "A person is competent to act as a juror if he be: 1. A citizen of the United States of the age of 18 years who shall have been a resident of the state and of the county or city for one year immediately before being selected and returned."

[2]Such a jury was selected and the defendant was tried and acquitted.

in the criminal proceeding, the court could not properly direct him concerning future trials.

Jury selection is an administrative function of the court, which bears the responsibility of ascertaining if persons proposed are competent to serve. (§§ 204, 204d.) The court is not required to use lists compiled by the commissioner but may select jurors independently (§ 204d) as long as the selection is random (§ 205).[3] Section 204b provides that judges of the superior court may adopt supplementary rules for the guidance of a jury commissioner, "who shall at all times be under the supervision and control of the judges of the court." The jury commissioner is a ministerial officer, acting under direction of the court.[4]

Section 128, subdivision 5, declares that a court has the power to control its ministerial officers "in any manner connected with a judicial proceeding before it. . . ." Since selection of the jury commissioner and juries falls within the jurisdiction and supervision of the court, the jury commissioner's status as a party in the strict pleading sense is not the issue. Determinations on the procedures of the jury commissioner are within the jurisdiction conferred on the superior courts by sections 128 and 204a through 204d.

In considering the merits we must examine both the rights of the accused in the underlying criminal case and the interests of those who, after residing in the county less than one year, are excluded from jury service.

The accused's right to a fair trial by a jury of his peers is not infringed by a one-year residency requirement for jurors. **(3)** The United States Supreme Court in *Williams* v. *Florida* (1970) 399 U.S. 78, 100 [26 L.Ed.2d 446, 460, 90 S.Ct. 1893], explained that the jury impartiality provisions of the Sixth Amendment to the federal Constitution require the jury selection process to provide a "fair possibility for obtaining a representative cross-section of the community." The process of selection must be structured to insure that cognizable classes of citizens are not systematically excluded from jury service. (*Peters* v. *Kiff* (1972) 407 U.S. 493, 500 [33 L.Ed.2d 83, 92, 92 S.Ct. 2163]; *People* v. *Jones* (1973) 9 Cal.3d 546, 549-550 [108 Cal.Rptr. 345, 510 P.2d 705].)

[3]The randomness of the selection procedure is not an issue.

[4]Each judicial district has the option of appointing a jury commissioner who serves "at the pleasure of the judge of the superior court or a majority of the judges thereof" (§ 204a), or of compiling lists and selecting a panel without the aid of such a commissioner.

Within this guideline, there is broad discretion in establishing juror qualification. "It has long been accepted that the Constitution does not forbid the States to prescribe relevant qualifications for their jurors. The States remain free to confine the selection to citizens, to persons meeting specified qualifications of age and educational attainment, and to those possessing good intelligence, sound judgment, and fair character. 'Our duty to protect the federal constitutional rights of all does not mean we must or should impose on states our conception of the proper source of jury lists, so long as the source reasonably reflects a cross-section of the population suitable in character and intelligence for that civic duty.' " (*Carter* v. *Jury Commission* (1970) 396 U.S. 320, 332-333 [24 L.Ed.2d 549, 558-560, 90 S.Ct. 518]; fns. omitted.)

Selection from a cross-section of the community insures that prospective jurors will be chosen by court officials without systematic and intentional exclusion of economic, sexual, social, religious, racial, political, or geographical groups. (*Thiel* v. *Southern Pacific Co.* (1946) 328 U.S. 217, 220 [90 L.Ed. 1181, 1184-1185, 66 S.Ct. 984, 166 A.L.R. 1412]; *People* v. *McDowell* (1972) 27 Cal.App.3d 864, 872-873 [104 Cal.Rptr. 181].) **(4)** While exclusion of other groups might also be improper (*Witherspoon* v. *Illinois* (1968) 391 U.S. 510 [20 L.Ed.2d 776, 88 S.Ct. 1770]), it is apparent that, before exclusion may be held improper, there must be a common thread running through the excluded group—a basic similarity of attitudes, ideas or experience among its members so that the exclusion prevents juries from reflecting a cross-section of the community.

Measured by this standard, the potential jurors here excluded do not constitute a cognizable class. The group's membership—cutting across economic, social, religious, and geographical lines—changes day by day, creating a lack of real commonality of interest among the newly migrated. Newcomers as a class have no more (and appear to have less) legally significant commonality than 18- to 20-year-olds, an incognizable class. (*United States* v. *Olson* (8th Cir. 1973) 473 F.2d 686, 688; *People* v. *Hoiland* (1971) 22 Cal.App.3d 530, 533-540 [99 Cal.Rptr. 523].)

We are satisfied the defendant's right to an impartial jury is not impaired by the one-year residency requirement.

In considering the contention that those excluded by section 198 are denied equal protection of the law, we must first determine the appropriate standard for reviewing the statutory classification. A requirement of strict

judicial scrutiny is imposed when state action creates a "suspect classification" or impinges on the exercise of a fundamental right, and the state must justify its action by showing the classification is necessary to further a compelling state interest. In other cases the traditional test is applicable, requiring only that the state show a rational relationship between the classification and some conceivable legitimate state purpose. (*Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1, 16-17 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351]; *Dunn* v. *Blumstein* (1972) 405 U.S. 330, 336, 339 [31 L.Ed.2d 274, 280-281, 282-283, 92 S.Ct. 995].)

Because we have determined newcomers are not a cognizable class, the classification is not analogous to those based on race or lineage, and is therefore not suspect. (See, e.g., *McLaughlin* v. *Florida* (1964) 379 U.S. 184, 192 [13 L.Ed.2d 222, 228-229, 85 S.Ct. 283]; *Castro* v. *State of California* (1970) 2 Cal.3d 223, 229 [85 Cal.Rptr. 20, 466 P.2d 244].)

The fundamental right furnishing a basis for invoking strict scrutiny must be explicitly or implicitly guaranteed by the Constitution. (*San Antonio School District* v. *Rodriguez* (1973) 411 U.S. 1, 33-34 [36 L.Ed.2d 16, 42-44, 93 S.Ct. 1278].) Rights held fundamental include privacy (*Griswold* v. *Connecticut* (1965) 381 U.S. 479 [14 L.Ed.2d 510, 85 S.Ct. 1678]), voting (*Harper* v. *Virginia Bd. of Elections* (1966) 383 U.S. 663, 667 [16 L.Ed.2d 169, 172-173, 86 S.Ct. 1079]), and interstate travel (*Shapiro* v. *Thompson* (1969) 394 U.S. 618 [22 L.Ed.2d 600, 89 S.Ct. 1322]). However, such important interests as adequate housing (*Lindsey* v. *Normet* (1972) 405 U.S. 56, 74 [31 L.Ed.2d 36, 50-51, 92 S.Ct. 862]) and education (*San Antonio School District* v. *Rodriguez, supra,* 411 U.S. 1, 34-39 [36 L.Ed.2d 16, 43-47]) have been held not fundamental.

While trial by jury is constitutionally implanted in our system of justice, an individual's interest in serving on a jury cannot be held a fundamental right. The guarantee of the Sixth Amendment is primarily for the benefit of the litigant—not persons seeking service on the jury; and even though lawfully qualified, a citizen may not demand to serve on a jury. At most, the citizen is entitled to be considered for jury service. His interest in becoming a juror is clearly secondary to the interests of the litigants in securing an impartial jury, as shown by the traditional exclusion of prospective jurors for cause or upon peremptory challenge. Jury service is commonly viewed more as a combination of duty and privilege than as a right, sanctions being imposed for failure to appear. (Code Civ. Proc., § 238.)

It is also argued that the durational residency requirement for jurors impermissibly restricts an individual's right to travel. The Supreme Court cases holding a classification unconstitutional because it impinges on the

right to travel involve regulations denying very substantial rights or needs to short term residents. (*Shapiro* v. *Thompson, supra,* 394 U.S. 618 (funds necessary for subsistence); *Dunn* v. *Blumstein, supra,* 405 U.S. 330 (right to vote); *Memorial Hospital* v. *City of Maricopa* (1974) 415 U.S. 250 [39 L.Ed.2d 306, 94 S.Ct. 1076] (medical care).) In these cases the court has examined two factors: (1) whether the residency requirement would *deter migration;* and (2) the extent to which the waiting period served to *penalize* a person for exercising the right to travel. (*Memorial Hospital* v. *County of Maricopa, supra,* 415 U.S. at pp. 256-262 [39 L.Ed.2d at pp. 314-317].)

There is neither evidence nor reason to believe that one year's exclusion from jury duty is a factor materially affecting a person's decision to migrate, and any penalizing effect of the durational residency requirement is inconsequential. Thus, the requirement has insufficient effect on the right to travel to compel strict judicial scrutiny.

■ The strict test being inapplicable, the residency requirement for jurors must be upheld if there is any rational relationship between the requirement and some legitimate state objective. **(7)** The Legislature is presumed to have acted constitutionally, and statutory classifications may be set aside only if no ground can be conceived to justify them, and they are wholly irrelevant to the achievement of the state's objective. (*McDonald* v. *Board of Election* (1969) 394 U.S. 802, 809 [22 L.Ed.2d 739, 745-746, 89 S.Ct. 1404]; *McGowan* v. *Maryland* (1961) 366 U.S. 420, 425-426 [6 L.Ed.2d 393, 398-399, 81 S.Ct. 1101].)

■ The significance of jurors' residency is established by the Sixth Amendment "vicinage" requirement that jurors be chosen from the district where the crime was committed. (*People* v. *Jones, supra,* 9 Cal.3d 546, 549 et seq.) The Ninth Circuit Court of Appeals pointed out in upholding the one-year residency requirement for federal jurors (28 U.S.C.A. § 1861 et seq.) that one of the historic virtues of the jury, being selected from the community, is acquaintance with local conditions, customs and mores. (*United States* v. *Ross* (9th Cir. 1972) 468 F.2d 1213, 1215-1216; *United States* v. *Duncan* (9th Cir. 1972) 456 F.2d 1401, 1406, vacated on other grounds in 409 U.S. 814 [34 L.Ed.2d 72, 93 S.Ct. 161].) Moreover, in some cases jurors will be instructed to apply a local standard (*Miller* v. *California* (1973) 413 U.S. 15, 30-34 [37 L.Ed.2d 419, 434-436, 93 S.Ct. 2607]), making it important to obtain persons who have had time to become familiar with the community. The Legislature could properly

conclude that such objectives are served by a one-year residency requirement for California jurors.[5]

Let a peremptory of mandate issue as prayed.

Wright, C. J., McComb, and Burke, J., concurred.

**MOSK, J.**—I dissent.

The provision of section 198 prescribing a one-year durational residence requirement before a citizen may serve as a juror is violative of both the equal protection clause of the Fourteenth Amendment to the United States Constitution and article I, section 21, of the California Constitution.

At the threshold I observe that defendant (here the real party in interest) made timely objection. Before the jury was selected in respondent court he challenged the jury panel, attacking the constitutionality of the one-year residence requirement for jury service established by Code of Civil Procedure section 198. The testimony of the Jury Commissioner of San Diego (petitioner herein) establishes the procedure presently followed in setting up the panel of petit jurors. The names of all registered voters are secured from the registrar of voters; from this list, in order to limit the volume of names to be processed and still retain the same presumptive community cross-section contained in the list as a whole, the jury commissioner draws every fourteenth name as an initial supply source.[1]

Questionnaires are sent to the persons thus randomly selected, one question of which inquires into the length of the voter's residence in the county. The names of all voters with less than one year's residence are withdrawn from the pool but not discarded; their cards are flagged and set aside in a separate file to be restored to pool when the residence requirement has been met. The result of this procedure is that at no time during the life of any jury panel will it contain the name of any person who has not been a county resident for at least one year.

---

[5]This case is distinguishable from our cases holding invalid durational residency requirements for voting and candidacy for public office (*Young* v. *Gnoss* (1972) 7 Cal.3d 18 [101 Cal.Rptr. 533, 496 P.2d 445]; *Thompson* v. *Mellon* (1973) 9 Cal.3d 96 [107 Cal.Rptr. 20, 507 P.2d 628]), since they involved fundamental rights.

[1]This method of random selection appears to be administratively logical and legally acceptable, since the sample use is statistically reliable as a reflection of the total registered body of qualified electors. (See *People* v. *White* (1955) 43 Cal.2d 740, 754 [278 P.2d 9].) The use of the list of registered voters as a supply source is not challenged here, and will not be considered except as it relates to the fact that residential requirements for jurors are more restrictive than requirements to vote (*Young* v. *Gnoss* (1972) 7 Cal.3d 18 [101 Cal.Rptr. 533, 496 P.2d 445]).

The trial court found the exclusion of those citizens registered to vote but not residents in the county for one year could not be justified on the ground of administrative convenience—indeed, the procedure was obviously administratively inconvenient—and ruled that a residential requirement for jury service more onerous than the requirement for being an elector was unconstitutional. The challenge to the panel was sustained and the jury commissioner was directed to furnish a jury for the trial "from which no jurors have been excluded on residential grounds" other than the minimum residence requirements necessary to qualify to vote.[2] The order further made the ruling applicable to all future civil and criminal cases.

The majority concede that selection of juries is an administrative function of the courts. (Code Civ. Proc., § 204.) It is the court which bears the responsibility of ascertaining if persons proposed are suitable and competent to serve as jurors. (§ 204d.) Code of Civil Procedure section 204b provides that judges of the superior courts may adopt supplementary rules for the guidance of the jury commissioners, "who shall at all times be under the supervision and control of the judges of the court." The position of jury commissioner is a ministerial office, not empowered to exercise independent judgment, and it is a position created at the discretion of the superior courts. (§ 204a.) The courts are not required to use lists compiled by the commissioner but may select jurors regardless of such lists (§ 204d) as long as the selection is random (§ 205). Moreover, Code of Civil Procedure section 128, subdivision 5, declares that every court has the power to control its ministerial officers "in any manner connected with a judicial proceeding before it."

There being no problem of jurisdiction of the trial court to act, the fundamental issue is whether the trial court was correct in its ruling on the merits. I am convinced its position was sound and, indeed, compelled by constitutional analysis.

As observed in our recent consideration of residence requirements, such durational restrictions face an uncertain future in the law of this state. In *Thompson* v. *Mellon* (1973) *supra,* 9 Cal.3d 96, we rejected the concept that new residents have inadequate knowledge and are less qualified to assume a role in the affairs of their newly selected home than older residents, citing *Dunn* v. *Blumstein* (1972) 405 U.S. 330 [31 L.Ed.2d 274, 92 S.Ct. 995], and *Young* v. *Gnoss* (1972) *supra,* 7 Cal.3d 18. We therefore held that lengthy durational residence requirements for candidacy for public office are unnecessary to further the state's interest in having knowledgeable candidates.

---

[2]Such a jury was selected, the trial was held, and the defendant was acquitted.

In considering the validity of the durational residence requirements here in issue, we must acknowledge not only the rights of litigants in general and defendants in particular but also the effect upon potential jurors. The United States Supreme Court has held that persons arbitrarily excluded from jury service have a cognizable legal interest in nondiscriminatory jury selection, and injunctive relief is available to vindicate the interests of the excluded class. (*Carter* v. *Jury Commission* (1970) 396 U.S. 320, 329 [24 L.Ed.2d 549, 557, 90 S.Ct. 518].)

The right to trial by jury necessarily contemplates an impartial jury, drawn from a source which produces a " 'fair possibility for obtaining a representative cross-section of the community.' " (*Peters* v. *Kiff* (1972) 407 U.S. 493, 500 [33 L.Ed.2d 83, 92, 92 S.Ct. 2163]; *Thiel* v. *Southern Pacific Co.* (1946) 328 U.S. 217, 220 [90 L.Ed. 1181, 1184-1185, 66 S.Ct. 984, 166 A.L.R. 1412]; *People* v. *Jones* (1973) 9 Cal.3d 546, 549 [108 Cal.Rptr. 345, 510 P.2d 705]; *People* v. *White* (1954) 43 Cal.2d 740, 754 [278 P.2d 9].) So long as the source from which juries are empanelled reasonably reflects a cross-section of the population suitable for that civic duty, the states are free to prescribe relevant qualifications for their jurors. (*Carter* v. *Jury Commission* (1970) *supra,* 396 U.S. 320, 332-333 [24 L.Ed.2d 549, 558-560].) The prescribed qualifications must, however, reasonably relate to the efficiency and competence of the jurors, and must be equally administered. (*Brown* v. *Allen* (1953) 344 U.S. 443, 473 [97 L.Ed. 469, 497-498, 73 S.Ct. 397].)

The majority maintain that the constitutional limitation against unreasonable classifications in the selection of a jury panel does not extend to residence because the excluded group does not comprise a distinct, cognizable class as defined in *Hernandez* v. *Texas* (1953) 347 U.S. 475, 478 [98 L.Ed. 866, 870, 74 S.Ct. 667]. The contention of petitioner is that even if all those who have residence of less than one year are excluded, the remaining jury panel would be, as a group, a representative cross-section of the community, since those excluded on the basis of residence are composed of the same cross-section characteristics.[3]

---

[3]The Attorney General, as amicus curiae, argues the superior court should not have considered the issue at all because the defendant in the criminal proceeding out of which this case arose had no standing to attack the makeup of the panel since he was not a member of the excluded class. The Supreme Court resolved that question to the contrary in *Peters* v. *Kiff* (1972) *supra,* 407 U.S. 493, holding a defendant need not be a member of the class arbitrarily excluded to have "standing" to challenge the makeup of the panel: "When a grand or petit jury has been selected on an impermissible basis, the existence of a constitutional violation does not depend on the circumstances of the person making the claim." (*Id.* at p. 498 [33 L.Ed.2d at p. 91].)

No authority is cited, and I have found none, either to support or refute petitioner's *ipse dixit* declaration that newcomers have the same cross-section of views and backgrounds as more settled residents. It is more probable, however, that those who have residence of less than one year may not yet have irrevocably strong ties to the community; their involvement in local employment, business, homeownership, club or church activities, or school or neighborhood associations is far less than that of long-term residents. Whatever osmotic influence these community roots may have ultimately on one's outlook and perspective, newer residents *are* potentially different. To exclude them is to limit the structure of the panel as a genuine cross-section of the community; if there is a difference, that difference is excluded.

In *Peters* the Supreme Court speaks to this precise point: "When any large and identifiable segment of the community is excluded from jury service, the effect is to remove from the jury room qualities of human nature and varieties of human experience, the range of which is unknown and perhaps unknowable. It is not necessary to assume that the excluded group will consistently vote as a class in order to conclude, as we do, that their exclusion deprives the jury of a perspective on human events that may have unsuspected importance in any case that may be presented." (407 U.S. at pp. 503-504 [33 L.Ed.2d at pp. 94-95].) Similar observations were made by the high court in rejecting the exclusion of women from jury service: "It is not enough to say that women when sitting as jurors neither act nor tend to act as a class . . . to insulate the courtroom from either [sex] may not in a given case make an iota of difference. Yet a flavor, a distinct quality is lost if either sex is excluded." (*Ballard* v. *United States* (1946) 329 U.S. 187, 193-194 [91 L.Ed. 181, 186, 67 S.Ct. 261].)

Both opinions, the majority and this dissent, discuss a group; thus, adapting the classic apothegm of Descartes,[4] I find it obvious that the group exists, and is identifiable and ascertainable. Any further determination of the "cognizableness" of the class is unnecessary. Thus I conclude that, in denying jury service to a cognizable class, section 198 operates to deprive jury panels of a cross-section of the community. I would disapprove *People* v. *Hoiland* (1971) 22 Cal.App.3d 530 [99 Cal.Rptr. 523], to the extent it is inconsistent with the views expressed herein.

The resultant injury from application of the statute is not limited to a defendant on trial, but is equally disabling to the jury system as a whole and to the excluded class. Jury service affords a singular opportunity for the

---

[4] Je pense, donc je suis (I think, therefore I am). (1 Descartes, Principes de la Philosophie, section 7.)

citizen to become directly involved in the processes of government and the administration of justice. (See *Mitchell* v. *Johnson* (M.D.Ala. 1966) 250 F.Supp. 117, 121; *White* v. *Crook* (M.D.Ala. 1966) 251 F.Supp. 401, 406, 408.) Discrimination against any group makes participation less universal and detracts from the jury as a democratizing institution. (See *Williams* v. *Florida* (1969) 399 U.S. 78, 100 [26 L.Ed.2d 446, 460, 90 S.Ct. 1893]; Kuhn, *Jury Discrimination: The Next Phase* (1968) 41 So.Cal.L. Rev. 235, 246.) When any discernible group is excluded, we are taught by *Ballard* v. *United States* (1946) *supra,* 329 U.S. 187, 195 [91 L.Ed. 181, 187], "There is injury to the jury system, to the law as an institution, to the community at large, and to the democratic ideal reflected in the processes of our courts."

Arbitrary exclusion of an otherwise eligible group, then, is a denial of equal protection to members of that group, in that they are denied equal opportunity to serve as jurors. Whether jury service be characterized as a right, a privilege, or a duty, a state may no more extend it to some of its citizens and deny it to others arbitrarily or whimsically, than it may inviduously discriminate in the offering and withholding of the elective franchise. (*Carter* v. *Jury Commission* (1970) *supra,* 396 U.S. 320, 330 [24 L.Ed.2d 549, 557-558].)

It is urged, however, that there is a rational basis for requiring a one-year nexus between a juror and the community whose "sense of justice the jury as a whole is expected to reflect." (*United States* v. *Arnett* (D.Mass. 1970) 342 F.Supp. 1255, 1261; *United States* v. *Duncan* (9th Cir. 1972) 456 F.2d 1401, 1406, vacated on other grounds (1973) 409 U.S. 814 [34 L.Ed.2d 72, 93 S.Ct. 161].) In this argument petitioner asserts an interest in assuring a significant connection in terms of time between a juror and the community from which he is selected.

The requirement of a nexus of one year's residence was rejected in *Young* for the right to vote. Mere duration of residence seems no more relevant to the ability to comprehend and judge the issues of a typical trial than to the ability to analyze and judge the issues of a typical election. Although residence in the community is a critical consideration in determining compliance with the vicinage requirement of the Sixth Amendment (*People* v. *Jones* (1973) *supra,* 9 Cal.3d 546), the duration of residence does not appear rationally related to the only legitimate interest of the state in establishing juror qualifications, i.e., the assurance of obtaining capable jurors.

Under our trial system the jury is to determine the case exclusively on

the basis of evidence adduced in court. The asserted interest of the state —assurance of a jury's significant connection with the community and identification with local customs and norms—is based on the erroneous assumption that such extrajudicial knowledge is somehow involved in the jury's analysis of the evidence. Consideration of elements or factors inculcated by sources extraneous to the particular trial is highly improper. But in any event there is no supportive basis for holding that jurors with 13 months' residence in a community are for that reason alone better able to analyze evidence and reach a just verdict than those with 11 months' residence.

We reasoned in *Thompson* that the election process is adequate to "weed out incompetent, unknowledgeable candidates insensitive to, and unaware of, the best needs of the community" and therefore no need exists to resort to artificial residence barriers. (9 Cal.3d at p. 105.) The same rationale applies to the selection of jurors, since the incompetent and unknowledgeable can be weeded out through *voir dire* examination. Indeed, that is the function of *voir dire*. As the Supreme Court stated in *Thiel* v. *Southern Pacific Co., supra,* 328 U.S. at page 220 [90 L.Ed. at page 1185], a case originating in California: "Jury competence is an individual rather than a group or class matter. That fact lies at the very heart of the jury system. To disregard it is to open the door to class distinctions and discriminations which are abhorrent to the democratic ideals of trial by jury." The suggestion that a residence requirement more onerous than that required to be an elector tends to achieve a more qualified jury panel not only demeans the election process but overlooks the primary prerequisite of a cross-section, i.e., that it be representative of the entire community, not merely of the longer settled section of the community. Petitioner's contention that persons settled in the community can function better as jurors than transients passing through is a straw man, and "appears to confuse a bona fide residence requirement with a durational residence requirement." (*Dunn* v. *Blumstein* (1972) *supra,* 405 U.S. 330, 354 [31 L.Ed.2d 274, 291].)

The state must not only establish a legitimate purpose in creating the classification but must show that the distinction drawn by the statute is necessary to further the asserted interest. (*Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1, 17 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351].) The decision to register to vote—thus bringing the citizen into the jury commissioner's files—would appear to demonstrate sufficient permanency and concern for the community. No persuasive justification appears for the requirements for jury selection to be greater than those for the right

to vote. Indeed, the converse would seem more rational: voting produces a permanent effect upon the entire community, its governance, its fisc, its future; jury service involves the property or liberty of a single individual on an ad hoc basis.

Finally, it is obvious the statutory classification serves no interest of administrative convenience. On the contrary, since the basic source utilized is the voter registration list, the more restrictive requirement serves as an additional, onerous and unnecessary bureaucratic burden on the administration of the jury system.

For the foregoing reasons I conclude that the one-year residence requirement for jury service violates the equal protection clause of both the federal and state Constitutions, and that the 30-day residence requirement for registering to vote is sufficient to establish jury service eligibility. I would deny the writ of mandate.

Tobriner, J., and Sullivan, J., concurred.