[Civ. No. 45277. First Dist., Div. Four. Nov. 29, 1979.]

**BERNARD OSTRAGER, Plaintiff and Appellant, v.
STATE BOARD OF CONTROL et al., Defendants and Respondents.**

**COUNSEL**

Cooley, Godward, Castro, Huddleson & Tatum, Michael Traynor, Gregory F. Wilson, Margaret C. Crosby, Alan L. Schlosser and Amitai Schwartz for Plaintiff and Appellant.

George Deukmejian, Attorney General, Robert Willis Walker and Iver E. Skjeie, Deputy Attorneys General, for Defendants and Respondents.

**OPINION**

**POCHÉ, J.**—This action challenges the residency requirement of the California victims of crime statute, Government Code sections 13959-13969.1.

While vacationing in San Francisco, appellant, a citizen of the State of New York, was shot in the leg by a person unknown to him. He was hospitalized for surgical and medical treatment in San Francisco and then returned to his home. He filed an application for assistance with the respondent board which administers California's victims of crime statute. Respondent refused to accept that application because appellant was not a resident of California at the time the crime was committed.

After his application was rejected, appellant petitioned for writ of mandate, declaratory and other relief, seeking both a determination that the residency limitation in the victims of crime statute is unconstitutional and an order directing respondent to entertain his application. An alternative writ issued. Respondents demurred generally to the petition. The trial court sustained the demurrer without leave to amend. This appeal is from the judgment that followed.

### THE CALIFORNIA VICTIMS OF CRIME ACT

The California Victims of Crime Act begins by declaring that: "It is in the public interest to indemnify and assist in the rehabilitation of those residents of the State of California who as the direct result of a crime suffer a pecuniary loss." (Gov. Code, § 13959.)[1] A victim may apply for assistance with the State Board of Control if he or she "was a resident of California at the time the crime was committed and either: [¶] (1) The crime was committed in California; or [¶] (2) The person whose injury or death gave rise to the application was a resident of California who was injured or killed while temporarily outside the state." (Gov. Code, § 13961, subd. (a).)

---

[1]The statute does not define the term "resident of California at the time the crime was committed." However, Government Code section 244 sets forth rules for determining the place of residence. In relevant part, section 244 provides: "(a) It is the place where one remains when not called elsewhere for labor or other special or temporary purpose, and to which he or she returns in seasons of repose. [¶] (b) There can only be one residence. [¶] (c) A residence cannot be lost until another is gained. . . . [¶] (f) The residence can be changed only by the union of act and intent. . . ."

The State Board of Control has adopted a regulation, California Administrative Code, title 2, section 649.12, defining the term "resident of California" for purposes of

Appellant does not claim that while he was visiting California he was a "resident" under either of the foregoing provisions. Instead, he challenges the constitutionality of the residency requirement.

## I. *Privileges and Immunities Clause of Article IV.*

■ Appellant's principal challenge is made under the privileges and immunities clause of article IV of the United States Constitution, the contours of which the Supreme Court itself admits have not been "precisely shaped by the process and wear of constant litigation and judicial interpretation over the years since 1789." (*Baldwin* v. *Montana Fish and Game Comm'n* (1978) 436 U.S. 371, 379 [56 L.Ed.2d 354, 362, 98 S.Ct. 1852].) Two very recent decisions of the United States Supreme Court, *Baldwin* v. *Montana Fish and Game Comm'n, supra,* and *Hicklin* v. *Orbeck* (1978) 437 U.S. 518 [57 L.Ed.2d 397, 98 S.Ct. 2482], decided within a month of each other, offer clear guidance in this area.

In *Baldwin,* Montana's elk-hunting license statutes, under which nonresident elk hunters were charged 25 times as much as the residents, were held not to violate the privileges and immunities clause. Mr. Justice Blackmun's majority opinion traces the history of the clause, reviews the cases interpreting it and in so doing emphasizes the rationale of *Corfield* v. *Coryell* (C.C.E.D.Pa. 1825, No. 3,230) 6 F. Cas. 546, 552: "In his opinion in *Coryell*, Mr. Justice Washington . . . included in his list of situations, in which he believed the States would be obligated to treat each other's residents equally, *only those where a nonresident sought to engage in an essential activity or exercise a basic right.*" (Italics added.) The court then uses the *Corfield* analysis in deciding that the distinction between residents and nonresidents made by Montana in establishing access to elk hunting does not "threaten a basic right in a way that offends the Privileges and Immunities Clause." (*Id.,* at p. 387 [56 L.Ed.2d at p. 367].)

---

the victims of crime statute. That regulation provides "Resident of California, for purposes of this article, means a citizen of this state as defined in Government Code Section 241, or an alien residing in California who is in possession of a document issued by the United States Immigration and Naturalization Service which authorizes such person to reside in this state."

Government Code section 241, referred to in the regulation, provides that: "The citizens of the State are: [¶] (a) All persons born in the State and residing within it, except the children of transient aliens and of alien public ministers and consuls. [¶] (b) All persons born out of the State who are citizens of the United States and residing within the State."

We find by identical reasoning that the privileges and immunities clause is not violated by requiring applicants for compensation under the California victims of crime statute to be Californians. Nor do we understand appellant to challenge the conclusion that if the *Corfield* analysis applies, the privileges and immunities clasue is not violated. Rather, appellant contends that we should view the *Baldwin* decision as "an aberration" and instead should apply the rationale of *Hicklin* v. *Orbeck, supra,* 437 U.S. 518, decided one month after *Baldwin.* There the high court applied the privileges and immunities clause to invalidate the "Alaska Hire" law which required that Alaskans be hired in preference to nonresidents for oil and gas pipeline work.

Justice Brennan's opinion in *Hicklin* likened the case to prior decisions which invalidated state discrimination against nonresidents seeking to ply their trade, practice their occupation, or pursue a common calling within the state. In that review he characterized *Toomer* v. *Witsell,* 334 U.S. 385 [92 L.Ed. 1460, 68 S.Ct. 1157] as "the leading modern exposition of the limitations the Clause places on a State's power to bias employment opportunities in favor of its own residents." "...*(Toomer)* invalidated a South Carolina statute that required nonresidents to pay a fee one hundred times greater than that paid by residents for a license to shrimp commercially in the three-mile maritime belt off the coast of that State. The Court reasoned that although the Privileges and Immunities Clause 'does not preclude disparity of treatment in the many situations where there are perfectly valid independent reasons for it, '*id.,* at 396 [68 S.Ct., at 1162], '[i]t does bar discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States.' *Ibid.* A 'substantial reason for the discrimination' would not exist, the Court explained, 'unless there is something to indicate that non-citizens constitute a peculiar source of the evil at which the [discriminatory] statute is aimed.' (*Id.,* at 398 [68 S.Ct., at 1163]. Moreover, even 'where the presence or activity of non-residents causes or exacerbates the problem the State seeks to remedy, there must be a reasonable relationship between the danger represented by non-citizens, as a class, and the...discrimination practiced upon them.' *Id.,* at 399 [68 S.Ct., at 1164]. *Toomer's* analytical framework was confirmed in *Mullaney* v. *Anderson,* 342 U.S. 415 [72 S.Ct. 428, 96 L.Ed.458] (1952), where it was applied to invalidate a scheme used by the Territory of Alaska for the licensing of commercial fishermen in territorial waters; under that scheme residents paid a license fee of only

$5 while nonresidents were charged $50." (*Hicklin, supra,* at pp. 525-526 [57 L.Ed.2d at pp. 404-405].)

Appellant here invites us: (1) to ignore the *Baldwin* test (i.e., is the nonresident seeking to engage in an essential activity or seeking to exercise a basic right?) as aberrational, as irrelevant or as of no precedential value given the clear standards reaffirmed in *Hicklin,* and, (2) to apply the *Toomer-Hicklin* test (i.e., is there a substantial reason for the discrimination?).

In our view, that approach is itself a deviation from the proper course because it is premised on a reading of *Hicklin* as being at odds with its 30-day-older sibling, *Baldwin.* It is apparent to us that the two decisions by the Supreme Court are entirely consistent with each other and were intended to be. If a state distinguishes between its citizens and those of a sister state, the teaching of *Baldwin* is to first ask whether the activity at issue was essential or involved the exercise of a basic right. If the answer to that question is in the negative, as it was in *Baldwin* and is here, no further analysis is required. Neither noncommercial elk hunting nor receiving compensation as a crime victim from the state in which the crime occurred is a basic right. On the other hand, if the *Baldwin* question is answered affirmatively, as when the nonresident seeking to practice an occupation is discriminated against, then the *Toomer-Hicklin* three-question analysis must be applied. Was there a substantial reason for the discrimination? Is there something to indicate that noncitizens constitute a peculiar source of the evil at which the discriminating statute is aimed? Is there a reasonable relationship between the danger presented by noncitizens and the discrimination practiced upon them?

This synthesis of *Baldwin* and *Hicklin* is not spun from this Court of Appeal but is the pure product of the United States Supreme Court: we count four separate occasions in the terse, unanimous, *Hicklin* opinion in which the *Baldwin* decision is specifically referred to and relied upon. Nowhere in the *Hicklin* opinion do we find any explicit or implicit criticism of *Baldwin* or its rationale. Accordingly, we reject appellant's privileges and immunities clause challenge.

II. *Equal Protection*

 Appellant's second basis of constitutional attack is the equal protection clause of the Fourteenth Amendment. He urges that the vic-

tims of crime statute is subject to strict judicial scrutiny because it invidiously discriminates between residents and nonresidents. Appellant points to no authority to support the theory that nonresidents should be afforded "suspect classification" treatment, nor are we able to find or create any.

As an alternative ground for invoking the strict scrutiny standard of review, appellant maintains that the victims of crime statute deprives him of his fundamental right to travel. Along this vein, he relies on several United States Supreme Court cases involving statutes drawn in question because of their *durational* residency requirements. (See, e.g., *Shapiro* v. *Thompson* (1969) 394 U.S. 618 [22 L.Ed.2d 600, 89 S.Ct. 1322]; *Dunn* v. *Blumstein* (1972) 405 U.S. 330 [31 L.Ed.2d 274, 92 S.Ct. 995]; *Memorial Hospital* v. *Maricopa County* (1974) 415 U.S. 250 [39 L.Ed.2d 306, 94 S.Ct. 1076].) But here, unlike the situations involved in those cases, the residency requirement is not durational—that is, the migrant is not required to maintain the "resident" status for a certain period before he qualifies for benefits. (*Ector* v. *City of Torrance* (1973) 10 Cal.3d 129, 135-136 [109 Cal.Rptr. 849].) Consequently, appellant's right to travel has not been infringed.[2]

Strict scrutiny being unnecessary and inappropriate, the residency requirement for the victims of crime statute must be upheld against an equal protection challenge if there is any rational relationship between the requirement and some legitimate state objective. ▮ The "Legislature is presumed to have acted constitutionally, and statutory classifications may be set aside only if no ground can be conceived to justify them, and they are wholly irrelevant to the achievement of the state's objective. (*McDonald* v. *Board of Election* (1969) 394 U.S. 802, 809 [22 L.Ed.2d 739, 745-746, 89 S.Ct. 1404]; *McGowan* v. *Maryland* (1961) 366 U.S. 420, 425-426 [6 L.Ed.2d 393, 398-399, 81 S.Ct. 1101].)" (*Adams* v. *Superior Court, supra,* 12 Cal.3d 55,

[2]When faced with the issue of whether a durational residency requirement for jurors impermissibly infringed upon an individual's right to travel, the California Supreme Court found "neither evidence nor reason to believe that one year's exclusion from jury duty is a factor materially affecting a person's decision to migrate, and any penalizing effect of the durational residency requirement is *inconsequential*. Thus, the requirement has *insufficient effect* on the right to travel to compel strict judicial scrutiny." (*Adams* v. *Superior Court* (1974) 12 Cal.3d 55, 62, [115 Cal.Rptr. 247, 524 P.2d 375] (italics added.)

Even if the residency requirement in the victims of crime statute would deter some individuals from visiting the state, we believe that the extent of any such deterrence would be "inconsequential."

62.) ██ We find the residency requirement of the victims of crime statute to be rationally related to the state's legitimate objective of cost savings. (See, e.g., *Baldwin, supra,* 436 U.S. at p. 391 [56 L.Ed.2d at p. 370]; *Kirk* v. *Regents of University of California* (1969) 273 Cal.App.2d 430 [78 Cal.Rptr. 260], app. dism. (1970) 396 U.S. 554 [24 L.Ed.2d 747, 90 S.Ct. 754].)

## III. *Other Grounds.*

The residency requirement does not operate as an impediment to travel and accordingly we reject appellant's claims under both the privileges and immunities clause of the Fourteenth Amendment and the interstate commerce clause. Any interference with appellant's freedom of movement is at most inconsequential. (See fn. 2, *supra.*)

Lastly, appellant presents a blanket argument that because "California has the independent authority and independent reasons for vigorously striking down irrational discrimination, irrespective of whether it also violates the Constitution of the United States" the victims of crime statute is unconstitutional under the California Constitution. Although we recognize that California may independently interpret its own Constitution (*Serrano* v. *Priest* (1976) 18 Cal.3d 728, 764 [135 Cal.Rptr. 345, 557 P.2d 929]) we are unconvinced that an independent interpretation would yield a contrary result in this case.

The judgment is affirmed.

Rattigan, Acting P. J., and Christian, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 27, 1980. Manuel, J., did not participate therein. Newman, J., was of the opinion that the petition should be granted.